Statement of the Case.
MONROE, J.
Plaintiff alleges that in October, 1882, the defendant employed him as clerk at $20 per month, with board and washing, and that he worked for 78% months, earning $1,566.65; that his salary was then increased to $30 per month, upon which terms he worked 115 months, earning $3,450, making a total of $5,616.65; that in addition thereto he became entitled to certain credits, as shown by the account annexed to his petition, amounting to $1,379.45, thus making a grand total of $6,396.10, from which are to be deducted debits amounting to *303 $3,909.82, leaving a balance due him of $2,426.28. He further alleges that in. August, 1900, he left defendant’s service, and rendered a statement of his account, and that defendant acknowledged its correctness, and made a payment thereon; and he prays judgment accordingly. The defendant, for answer, admits that lie employed plaintiff at $20 a month and board, etc., for a number of years, but alleges that he discharged him August 3, 1897, and has not employed him since. He further alleges that plaintiff’s earnings were consumed by him, and that his claim for salary is barred by the prescription of three years. In this court he further files a plea of prescription of three years as against the items charged, other than salary.
The facts, as they apipear to us, from the evidence, direct and circumstantial, that we find in the record, are as follows: The defendant, who is an elder brother of the plaintiff, in 1882 employed the latter as clerk, bookkeeper and general utility man in a country store, and the plaintiff entered upon the discharge of his duties, began the keeping of the books, and of his account in them, about October 1st of that year, and so continued until August 1, 1900. During the 18 years, less 2 months, that intervened between those dates, with trifling exceptions, he and his brother together managed the business upon such terms of apparent equality, save that the plaintiff alone kept the books, that they were supposed'by some persons to be partners. The result, however, was that the capital of the defendant was increased from about $2,100 to about $25,000, whilst the plaintiff, beyond his experience, seems to have acquired little or nothing other than the claim here set up. He alleges, and it is admitted, that he was originally employed at $20 a month, with board, etc.; and his account, filed in evidence, and shown to be a correct transcript of the book in' which it was kept, shows that, apart from the credits for “work,” he received other credits, indicating that from time to time, in addition to his services, he had put his own money and property into his brother’s business. Thus we find the following on the credit side of his account, between October 4, 1882, and June 21, 1883, to wit:
1882. Or.
Oct. 28. By y2 of 49 lbs. of lint cotton, at 8c...............$ 2 15
Nov. 10. By charges on cotton, $50.00 ; 9,477 lbs. cot. seed, $28.45 78 45
Nov. 20. By S/D on R„ O. & Co., $50.00 .................. 50 00
Dec. 16. By E. G. H.............. 21 50
Dec. 18. By 2 sets harness.......... 2 25
1883.
Jany. 31. By charges on cotton....... 20 00
Mch. 17. By S/D on Messrs. R., C. & Co..................... 106 00
May 17. By 4,083 shingles, at $3.75 per M.................. 15 30
Deducting the total of the debit items, his account, upon June 21, 1883, showed a balance to his credit of $65.10. Thereafter, his accounts, year by year, begin with the credit balance, as shown by the last preceding account, as against which, and the succeeding credits, the amounts and values received are charged; the balance shown in his favor November 21, 1900, the date of the last entry, being the amount claimed in this suit.
The plaintiff alleges that in 1890, or thereabouts, the defendant agreed to increase his compensation to $30 a month; and the defendant admits the truth of the allegation, but testifies that there was a condition subsequent imposed, with which the plaintiff did not comply. The plaintiff testifies that there was no such condition, and his account from 1S91 to 1900, inclusive, shows that he was credited for “work” at the rate of $30 a month. The defendant sets up in his answer and testifies that upon August 3, 1897, he discharged the plaintiff, and did not thereafter employ him. All the witnesses in the case, among whom are several prominent gentlemen of the neighborhood, testify that the plaintiff attended to the business of defendant’s store, as he had^ always done, until late in the year 1900. The plaintiff denies that he was ever discharged, and testifies that, on the contrary, he several times spoke of leaving, but was prevailed on by the defendant to remain with him, until he finally notified defendant that he would quit his employment on the 1st of August, 1900, and that, whilst he claims nothing for his services after that date, he remained about the store for several months in order to give to his successor the benefit of his knowledge and advice.
*305 He further testifies that between 1897 and 1900 he had two business offers, which he declined because the defendant did not wish him to leave. And in this he is corroborated by one of the parties by whom the offers were made (the other not having been called), who testifies that he proposed to build a store and take the plaintiff into partnership, but that the plaintiff, after considering the proposition for a day or two, declined it. The defendant himself gives such testimony as the following: Being asked whether he meant seriously to say that the plaintiff worked in his store, clerked for him, and kept his books, from 1897 to 1900, for nothing, answers: “I can’t say he done it for nothing, because he had free access to the safe, buggies, horses. He went as he pleased; came back when he pleased. He was not compelled to work. He done it of his own accord.” He further states that in 1898 he employed a man for a few months, and that his son assisted in the business. It, however, appears from the testimony of the son that he did not leave school until some time in 1899, being then about 17 years old, and he does not pretend to have rendered much assistance up to the time that the plaintiff left the business. Upon the whole, it is beyond question that the plaintiff continued to keep the books and to attend to the business of the store, as he had previously done, until August 1, 1900, and, though he makes no charge therefor, that he continued to render services in that connection until January, 1901, to which are to be added the further facts that between 1897 and 1900 his own account with the defendant was kept as it had previously been kept; that during that period he refused business offers from two other men because he was unwilling to leave his brother; and finally his positive testimony that he was not discharged. It may be remarked in this connection, and in corroboration of the plaintiff’s theory and testimony upon the point, that his account, running from August, 1897, to November 21, 1900, shows that he received and charged himself with cash, merchandise, and other items, exactly as he had done during the 15 or 18 years before, amounting in the aggregate to 8602.08.
It is not likely, and it is not pretended, that the defendant gave him the money or merchandise, etc., with which he is thus charged; nor is it pretended that he borrowed, bought, or misappropriated the one or the other; nor yet has it ever been’ even remotely suggested that he owes anything for the same. We must therefore conclude, in order to account at all for the phenomenon thus presented, either that the plaintiff received the cash and merchandise, etc., with the understanding that it was to be charged against an agreed salary for the services rendered by him, or that he received it with the understanding that he was to be compensated in that way, and was to fix the amount himself; and, as between the two, we choose the first alternative, as the .more reasonable and the better sustained by the evidence. As against all this, we have the statement of the defendant, corroborated by that of his son, who in 1897 was about 16 years of age, to the effect that he discharged the plaintiff upon August 3, 1897. The corroboration referred to is as follows: M. E. Sleet, testifying in July, 1901, states that he is past 19 years of age, and that he remembers that his grandmother, the mother of the plaintiff and defendant, was buried-upon August 3, 1897. He is then asked by counsel for the defendant:
“Have you heard a conversation in which he [the defendant] said that he did not need his [plaintiff’s] services any longer, and for him not to consider himself in his employ; that he would not pay him a salary, but he could live there, with the place as his home, as long as he wished to, and he stayed until 1900?” To this, the witness, having previously fixed the date as August 3, 1897, answers, “Yes, sir;” and he is not further interrogated on that subject.
Assuming that, if the witness had been left to his own recollection, he would have given his testimony in the language of the question, "and conceding that he heard some such conversation, the plaintiff’s testimony to the effect that the particular day was, as between himself and his brother, as peaceful as it was melancholy, seems rather the more credible. Both the plaintiff and the defendant, however, agree that there were high words between them at times, which would be followed by expressions of regret, and it is possible that upon some such occasion the *307 defendant may Kaye used the language attributed to him; but, if he did, it did not accomplish the discharge of the plaintiff, and was not so intended for any considerable time after it was uttered; the truth being that the plaintiff finally left the defendant’s employ of his own accord, and because, or partly because, he considered that he was not being paid enough for his services.
There is some attempt to discredit the account upon which the suit is brougtit because it was kept by the plaintiff, because from 1897 it was kept in a ledger which was not in use after that year for any other purpose, and because the plaintiff professes a good deal of ignorance in regard to it. These objections are not well founded. The plaintiff was the bookkeeper, and it was his duty to keep the account, since there was no one else to keep it; and, as it is conceded that he has always been honest and faithful, there is no reason to suppose that he did not keep it correctly. As to the second objection, it is shown beyond controversy, and in fact is undisputed in the testimony, that the account was kept in the particular ledger referred to because the defendant, for reasons of his own, requested that it should be so kept; preferring that it should not appear in the regular books of the store. Concerning the defendant’s supposed ignorance, it would probably be enough to say that all of the books, from the beginning, belonged to him, and were open to his inspection, and that, as a rule, men do not accumulate money by deliberately keeping themselves in ignorance of what their employes are drawing, or of the other expenses of their business. Beyond this, the plaintiff made a demand upon the defendant for a settlement in the autumn of 1900, predicated upon his account as it appeared on the books, and the books were and had been in the defendant’s possession; and yet, though this suit was not entered until May 11, 1901, and though his son appears to have been graduated in 1899 as a bookkeeper, and might have afforded him some assistance, nevertheless, being-challenged so to do, when on the stand as a witness, the defendant did not undertake to point out a single error in the account sued on, but contented himself with the statement that he knew nothing about it, save that he did not owe it. Our conclusion is that he does owe it, unless there is some law to the contrary.
Opinion.
There can be no doubt that for nearly 18 years there was between these litigants a running account, made up not only of the entries crediting the plaintiff with the agreed price of his services, and charging him with the money drawn in payment of the same, but including other transactions whereby the plaintiff turned over to the defendant, from time to time, money and property, and obtained from him merchandise and other movable property. And. it is equally beyond question that this is an action to recover the balance alleged to be due on that account. It is so declared in the petition, and the defendant’s counsel, insisting that “the character which the plaintiff’s counsel gives the action by his pleading determines the prescription applicable to it,” pleads the prescription of three years, under Act No. 78 of 18SS, which, so far as it need here be quoted, reads:
“Be it enacted * * * that article 3538 of the Revised Civil Code be amended and re-enacted so as to read as follows:
“ ‘Art. 3538. The following actions are prescribed by three years:
“ ‘That on the accounts of merchants whether selling for wholesale or retail.
“ ‘That on the accounts of retailers of provisions, and that of retailers of liquors who do not sell ardent spirits in less quantities than a quart.
“ ‘That on all other accounts.’
“This prescription only ceases from the time there has been an account acknowledged in writing, a note or bond given, or action commenced.”
The only change that the statute makes in the article amended is in substituting for the words “all other open accounts” the words “all other accounts,” and the effect is that the prescription denounced is now made to apply to accounts stated or rendered, and verbally or tacitly acknowledged, as well as to open accounts not so acknowledged. This being the case, it makes no difference whether the account sued on is an unacknowledged open account, or whether it is an account stated or rendered, and verbally or tacitly *309 acknowledged, since it is not asserted that it has been acknowledged in writing, or that any note or bond has been given, or that it has ever been sued on before, from which it follows that the prescription running against it can have been interrupted only by the institution of the present action.
The counsel for the defendant say in'their brief:
“Prescription in this ease was interrupted on the 15th of May, 1901, when citation was served, and, computing back for three years, we reach May 15, 1898, and all of the account which antedates that time is prescribed; so the lower court decided, and so, we think, should this court decide, if it should come to the conclusion that the plaintiff has made out a case by a preponderance of the evidence.”
There is, however, one factor which the learned counsel and the district court have not taken into consideration, and that is the question of the imputation of payments.
Upon May 15, 1898, as appears from the account, there was due the plaintiff, after deducting all that he had received up to that time, a balance of $2,135.55. After that date, as before, he drew money and charged himself with' merchandise, and the money and merchandise so received figures upon the account' to his debit, and to the credit of the defendant. Inasmuch, however, as the defendant gave him no particular instructions as to whether to impute the payments thus made to the past-due or to the accruing indebtedness, the law imputes them to the former, as the debt of the same nature longest due. Rev. Civ. Code, art. 2166. So that, as the debit entries in question amount to much less than the balance due, the plaintiff is entitled to recover in this suit the aggregate amount of the credits which appear upon the account after May 15, 1898, without regard to the debit entries thus imputed to the payment of the past-due balance. This aggregate is made up of credits fo'r salary from May 15, 1898, to August 1, 1800 (26 months), at $30 per month ($780).
It is therefore ordered, adjudged, and decreed that the judgment appealed from be amended by increasing the principal amount for which the defendant is condemned from $407.03 to $7S0, and, as amended, affirmed; the defendant to pay all costs.