(91 South. 726)

No. 22407.

## HARMAN & STRINGFELLOW v. LEGRANDE et al.

(Feb. 27, 1922.   Rehearing Denied April 24, 1922.)

*(Syllabus by Editorial Staff.)*

**1. Mortgages. ☞96—Effect of mortgage does not cease 10 years after registering.**

Under Civ. Code, art. 3369, providing that registry preserves the evidence of mortgages and privileges for 10 years, and that its effect then ceases if the inscription has not been renewed, it is the effect of the inscription, and not of the mortgage, that ceases, and this has not been changed by the amendment by Act No. 227 of 1918, extending the time for reinscribing certain mortgages.

**2. Statutes ☞115(3)—Added provision as to registry and prescription of mortgages held not within title if applying to mortgages in general.**

Act No. 105 of 1916, entitled, "An act to amend and re-enact article 3305 of the Civil Code," and which adds a provision for hypothecation of vessels, and provides that all such mortgages or hypothecations must be recorded, and shall prescribe in 10 years, violates the constitutional provision requiring objects of acts to be expressed in their titles, if the provision as to registry and prescription is intended to apply to conventional mortgages in general.

**3. Mortgages ☞89—Amendment as to registry and prescription held applicable only to mortgages of vessels.**

Under Act No. 105 of 1916, amending Civ. Code, art. 3305, by adding a provision concerning the hypothecation of ships and vessels, and providing that they must be recorded, and shall prescribe in 10 years, the provision respecting registry and prescription applies only to the mortgages and hypothecations provided for by the amendment and not to mortgages generally.

**4. Husband and wife ☞273(11) — Husband cannot mortgage community property or bind children by note or mortgage after wife's death.**

After the dissolution of the community by the death of the wife, the husband cannot mortgage the community property or execute a note or mortgage binding on the children or their property.

**5. Husband and wife ☞272(2)—Heirs take nothing until community debts paid.**

A wife's interest in community property is merely residuary, and her heirs inherit nothing until the community debts are paid, and the community property may be seized and sold contradictorily with the husband for payment of such debts.

**6. Limitation of actions ☞25(3)—Prescription; note converts open account into ordinary obligation prescriptible in 10 years.**

The execution of a note for a debt on open account is a written acknowledgment which converts it from a debt on open account, prescriptible by 3 years, into an ordinary money obligation, prescriptible by 10 years only.

**7. Husband and wife ☞273(4) — Surviving husband may acknowledge community debt by giving note.**

The husband, survivor in community, may acknowledge a community debt on open account by giving a note, thereby converting it into an ordinary money obligation prescriptible by 10 years only.

**8. Payment ☞43—On open account credits applied to oldest debit items.**

Credits on an open account must be imputed to the debit items oldest in date.

**9. Husband and wife ☞274(3)—Heirs not bound in solido for community debts.**

Heirs are bound jointly, each for his or her virile share, and not in solido for community debts.

**10. Vendor and purchaser ☞267—Sales; one paying notes secured by privilege and charging them to open account held to have no privilege.**

Where plaintiff, having a debt on open account against defendant, paid some of a series of notes given by defendant and secured by a mortgage and vendor's privilege, and charged them to the open account, the notes were thereby extinguished, and the accessory privilege perished with the principal obligation, and no part of the debt was secured by the vendor's privilege.

**11. Descent and distribution ☞19(2)—Succession; judgment against heirs restricted to property received when succession accepted with benefit of inventory.**

Where the acceptance of a succession by the heirs was with benefit of inventory, a judgment against them on the decedent's debt must be restricted to the property inherited by them from the decedent.

O'Niell, J., dissenting in part.

Appeal from Eleventh Judicial District Court, Parish of Red River; W. T. Cunningham, Judge.

Suit by Harman & Stringfellow against P. A. Legrande and others. From a judgment for plaintiff, the defendants other than the ·defendant named appeal. ˙ Affirmed in part, and set aside in part.

Foster, Looney & Wilkinson, of Shreveport, for appellants.

Thomas W. Nettles and S. M. Cagle, both of Coushatta, and S. C. Fullilove and Blanchard, Goldstein & Walker, all of Shreveport, for appellee.

By the WHOLE COURT.

PROVOSTY, C. J. In November, 1900, the principal defendant, P. A. Legrande, during the existence of his marriage and of the community of acquêts and gains between him and his deceased wife, purchased a tract of land; and for the credit part of the purchase price executed a series of notes secured by mortgage and vendor's privilege on the property. The land became community property, and the debt a community debt.

From the beginning of the year 1904 to the end of the year 1907, Legrande ran an open account with the store of the plaintiffs. Those of the said purchase price notes that matured during this time were paid by plaintiffs, and were charged as debit items on said open account.

Mrs. Legrande died on November 20, 1909. She left as her heirs the following children, issue of her marriage, namely: Julia, Lucy, A. G., J. N., Mary E:, J. Weaver, G. Minter, Sylvester, and Alfred, Legrande.

On July 16, 1910, some 8 months after the death of his wife, Legrande executed in favor of plaintiffs a note of $1,884.40 for the balance due on said open account plus another community debt of $114 for a payment made after 1907 and interest, and, to secure the payment of this note, gave a mortgage on said property. On this note he paid $191.04 on January 14, 1911, $200 on February 12, 1912, and $250 in December, 1912.

In 1909 plaintiffs paid the taxes on said property, amounting to $23.71.

In January, 1912, plaintiffs acquired two of the said purchase price notes, each being for $226 and interest at 8 per cent. from May 5, 1900, and 10 per cent. attorney's fees. On one of them is a credit of $245.68, as of date November 1, 1909.

On January 1, 1914, plaintiffs paid the taxes of 1913, on said property, amounting to $23.71.

The present suit is on the said notes, and for the reimbursement of said taxes. The heirs of Mrs. Legrande are made defendants with Legrande; and judgment is prayed in solido against all the defendants, with recognition and enforcement of the said mortgages and vendor's privilege.

In the event the said $1,884.40 note is held not to be binding on the codefendants of Legrande, plaintiffs allege that the debt for which the note was given is due and is a community debt, and, as such, entitled to be

satisfied out of the community property, and they pray for judgment accordingly.

They allege, further, that the balance due on said open account was for the amounts disbursed by them in satisfaction of the notes paid by them for Legrande, as aforesaid, and that the said $1,884.40 debt is to that extent secured by the same vendor's privilege which secured the notes then paid.

The judgment below was in solido for the full amount alleged, and recognized and ordered enforced the mortgages in question, and decreed the said debts entitled to be paid by preference out of the community property.

Legrande has not appealed, and, hence, as against him, the said judgment is final. The other defendants alone have appealed.

A. G. Legrande and Julia Legrande (Mrs. Alex Prudhomme) having died, leaving each one child, these children namely, K. G. Legrande and Gurtrude Prudhomme, who stand in the place of their said parents, by representation, have been made defendants. They and Lucy, Sylvester, and Alfred Legrande are minors, and, having no tutor, are represented in this suit by a curator ad hoc, duly appointed.

There is no denial of the debts, or of their being of the community. The two purchase price notes are said to have been paid; and, if still due, that the mortgage and privilege securing same are prescribed, by reason of 10 years having elapsed since their original recordation without a renewal of the registry. The note of $1,884.40 and the mortgage securing it are said to have been given by Legrande without authority. The prescription of three years is pleaded against the debt for which the note was given and against the taxes. It is denied that the heirs are bound in solido, but only jointly, each for his or her virile share.

The payment of the two purchase price notes is said to have resulted from certain payments made by Legrande having to be im-

puted to them—they being the more onerous debt, by reason of their being secured by mortgage and vendor's privilege. One of these payments of $200, made on February 12, 1912, was credited to the $1,884.40 note; the other payment, of $250, was made on December 20, 1912. The testimony is to the effect that the first of these payments was so credited with the knowledge and tacit consent of Legrande, and that, as to the $250 payment, the agreement was that it should be credited to the same note.

The contention that the mortgage and vendor's privilege securing the two purchase price notes are prescribed is based on article 3305, C. C., as amended by Act 105, p. 228, of 1916, and on article 3369, C. C., as amended by Act 227, p. 410, of 1918. The former reads:

"A conventional mortgage can only be contracted by act passed in presence of a notary and two witnesses, or by act under private signature. No proof can be admitted of a verbal mortgage. Hypothecation of ships and other vessels are made according to the laws and usages of commerce; provided that power boats, sailing vesels, pull boats, dredges, barges and all other kinds of water craft plying wholly within the navigable waters of this state provided that such vessels do not come within any of the provisions of the laws of the United States on the same subject-matter may be mortgaged and hypothecated in the same manner, to the same extent and with the same legal effect as mortgages and hypothecations are executed upon lands and other immovables susceptible of mortgage, and when the act contains the 'pact de non alliendo' such mortgage or hypothecation, in case of any sale or other alienation, shall follow the ship, steamboat, power boat and other vessels so mortgaged or hypothecated in the hands of third persons, and may be seized and sold by executory or other process in same way, manner and extent as lands and other immovables are now sold under conventional mortgages containing said pact. All such mortgages or hypothecations must be recorded in the parish where the owner resides and shall prescribe in ten years from the date of registry."

The act of 1918 reads:

"The registry preserves the evidence of mortgages and privileges during ten years, reckon-

ing from the day of its date; its effect ceases, even against the contracting parties, if the inscriptions have not been renewed before the expiration of this time, in the manner in which they were first made; provided, that in all cases where the mortgages and privileges secure the payment of notes, bonds or other obligations maturing after ten years, this renewal of the original inscription shall be made within three months from the expiration of the last maturing notes, bonds or other obligations, as fixed in the original instruments from which they sprung or with which they are identified. In all cases the reinscription of the mortgages and privileges shall preserve their effect for ten years from the date of the timely renewal as above provided.

"But the provisions of the above paragraph shall not obtain with regard to the mortgages to which husbands are subject for the dowry and other claims of wives and tutors and curators towards minors, interdicted and absent persons whose estates they administer.

"The reinscription of mortgages is also dispensed with in certain cases provided for by special laws."

Before the said amendment, article 3369 read:

"Art. 3369. The registry preserves the evidence of mortgages and privileges during ten years, reckoning from the day of its date; its effect ceases, even against the contracting parties, if the inscriptions have not been renewed before the expiration of this time, in the manner in which they were first made.

"But this rule does not obtain with regard to the mortgages to which husbands are subjected for the dowry and other claims of wives, and tutors and curators towards minors, interdicted and absent persons, whose estates they administer.

"The reinscription of mortgages is also dispensed with in certain cases provided for by special laws."

[1] Interpreting this article, this court held that—

"The effect of the inscription, and not the effect of the mortgage, ceased at the expiration of ten years." Police Jury of W. Baton Rouge v. Bergeron, 11 La. Ann. 390; Sheperd v. N. O. Cotton Press, 2 La. Ann. 100; Factors' & Traders' Ins. Co. v. Warren, 37 La. Ann. 85.

And the said amendment militates in no way against that view. Its purpose was simply to extend the time within which mort-

gages to secure notes maturing after ten years should have to be reinscribed.

[2, 3] So far as the act of 1916 is concerned, its title expresses no intention of legislating on the subjects of registry and prescription, for it reads, "An act to amend and re-enact article 3305 of the Revised Civil Code of 1870," and that article has no reference to registry or prescription. It reads:

"Article 3305. A conventional mortgage can only be contracted by an act passed in presence of a notary and two witnesses, or by an act under private signature. No proof can be admitted of a verbal mortgage.

"Hypothecations of ships and other vessels are made according to the laws and usages of commerce."

If, therefore, the purpose of said act of 1916 was to legislate on the subjects of registry and prescription of conventional mortgages in general, that purpose failed because of noncompliance with the constitutional provision requiring the objects of acts to be expressed in their titles. But, very evidently, such was not the purpose; but, in saying that "all such mortgages or hypothecations must be recorded in the parish where the owner resides and shall prescribe in ten years from the date of registry," the intention was to impose such condition only upon those certain "mortgages and hypothecations" for the authorizing of which the act makes original provision, namely, of power boats, sailing vessels, pull boats, etc.

Our conclusion is that the mortgage and privilege securing the payment of said notes are not prescribed.

[4] The contention that the $1,884.40 note and the mortgage securing it were given without authority is well founded. After the dissolution of the community by the death of the wife the husband is without authority to mortgage the property of the community. Bennett v. Fuller, 29 La. Ann. 663; Owen v. Hanlon's Sons, 136 La. 455, 67 South. 329; Broussard v. Bernard, 7 La. 222. And Legrande had no authority from

his children to execute a note binding upon them, or a mortgage upon their property.

[5] But because plaintiffs cannot recover on the said note is no reason why they should not recover on the alternative demand based on the debt itself for which the note was given. And, indeed, the question of mortgage vel non is of little importance, since the wife's interest in the community property is merely residuary; and, as a consequence, her heirs may be said to inherit nothing until all the debts of the community are paid, and, since the property of the community may after the death of the wife be seized and sold contradictorily with the husband alone for the payment of the debts of the community. Miguez v. Delcambre, 125 La. 190, 51 South. 108; Hawley v. Crescent City Bank, 26 La. Ann. 230; Verrier v. Loris, Sheriff, 48 La. Ann. 717, 19 South. 677; Landreaux v. Louque, 43 La. Ann. 234, 9 South. 32.

[6] Said debt was not prescribed at the time said note was executed for it, and said note was a written acknowledgment of it which converted it from a debt on open account, prescriptible by 3 years, into an ordinary money obligation, prescriptible by 10 years only.

[7] That the husband, survivor in community, has authority to make such an acknowledgment of a community debt is well settled. Hawley v. Crescent City Bank, 26 La. Ann. 230; Luria v. Cote Blanche Co., 114 La. 385, 38 South. 279.

[8] That the debt was not prescribed at the time the note was given results from the fact that the part of the debt on open account for which the note was given was created after August, 1907—less than three years before the giving of the note, which was on the 16th day of July, 1910. All the debits previous to August, 1907, were met by the several credits figuring on the account, these credits having to be imputed to the debit items oldest in date. Sleet v. Sleet, 109 La. 302, 33 South. 322; Houeye v. Henkel, 115 La. 1066, 40 South. 460. The debits were as follows: For 1904, $1,322.90; for 1905, $1,389.16; for 1906, $1,570.18; for 1907, $1,532.54—and the credits were: For 1904, $3.30; for 1905, $1,237.04; for 1906, $1,349.05; for 1907, $1,356.59. Total debits, $4,282.24. Total credits, $3,946.08. Balance $1,336.16. This balance, it is seen, is less than the total debits for 1907; and all the debits of 1907 bear date after August of that year.

That by said written acknowledgment the debt was converted from one prescriptible by three years into one prescriptible by 10 years. See Henry Block & Co. v. Papania, 121 La. 683, 46 South. 694.

As to the taxes of 1908, paid by plaintiff on May 18, 1909, the plea of prescription of three years is good, but not as to the taxes of 1913, paid in 1914.

By article 186 of the Constitution of 1898, which governs this case, tax mortgages and privileges are prescribed by three years; and by section 34 of Act 98 of 1886 (which, so far as we are informed, is still in force), "all taxes" are prescribed by three years. The taxes of 1913 are not prescribed, since this suit was filed in 1914.

[9] Heirs are bound jointly, each for his or her virile share, and not in solido. To that effect is the textual provision of the Code.

[10] The purchase price notes which were paid and charged to the open account were, as a matter of course, extinguished by the payment; and the accessory privilege perished with the principal obligation which it secured. No part, therefore, of the $1,884.40 debt is secured by vendor's privilege.

[11] Another matter, of course, is that the acceptance of the succession of their grandmother and mother by the minors has been with benefit of inventory; so that the judgment against them must be restricted in its

enforcement as against them to the property inherited by them from Mrs. P. A. Legrande.

The judgment against P. A. Legrande must remain unaffected.

It is therefore ordered, adjudged, and decreed that the judgment appealed from remain as rendered as against P. A. Legrande, and that, in so far only as it may affect the defendants other than P. A. Legrande, it be affirmed, except in the following particulars: (1) In condemning the said other defendants in solido; (2) in allowing 10 per cent. attorney's fees on the $1,884.40, and interest, represented by the note for that amount; (3) in recognizing and ordering enforced a mortgage as securing the payment of said $1,884.40 and interest; (4) in condemning said defendants to pay plaintiffs the amount of $14.25 and interest for taxes paid by plaintiffs in 1909; (5) in not restricting the liability of the minors K. G. Legrande, Gertrude Prudhomme, Lucy Legrande, Sylvester Legrande, and Alfred Legrande to the extent of their inheritance from Mrs. P. A. Legrande, deceased; that in these particulars it be set aside. And it is further ordered, adjudged, and decreed that for the amount of the said judgment as thus reduced the plaintiffs have judgment against the said defendants jointly, each for his or her virile share, and that the present judgment be executory against the said minors only to the extent of their inheritance from Mrs. P. A. Legrande, deceased, and that the plaintiffs pay the costs of this appeal.

Right is reversed to appellants to apply for a rehearing.

O'NIELL, J. (dissenting from that part of the opinion which holds that the surviving husband's written acknowledgment of the community debt, represented by an open account, took the half of the debt that was owing by his children out of the prescription of 3 years and made it subject to the prescription of 10 years). I concede that the surviving husband, after the death of his wife, had authority to interrupt prescription by a written acknowledgment of a community debt, as to the half of the debt for which his children might have been held responsible. I concede, therefore, that the giving of a promissory note by the surviving husband, to represent the community debt that was theretofore represented only by an open account, interrupted the prescription of 3 years that was running against the account. But it is also conceded in the majority opinion rendered in this case—in fact it could not be denied—that the giving of the promissory note by the surviving husband did not novate the half of the debt for which his children might have been held responsible. In other words, it is, and must be, conceded that the children are not bound by the contractual obligation of their father, represented by his promissory note. This contractual obligation of the surviving husband, represented by his promissory note, is subject to the prescription of 5 years, as far as he is concerned. But it seems anomalous to me that the half of the debt for which his children may be held responsible should be subject to the prescription of 10 years merely because he gave his promissory note to represent the obligation.

Article 3538 of the Civil Code, before it was amended by Act 78 of 1888, p. 86, enumerated the debts on which actions should be prescribed by 3 years, thus:

"The following actions are prescribed by three years:

*   *   *   *   *   *   *   *   *

"That on all other open accounts.

"This prescription only ceases from the time there has been an account acknowledged, a note or bond given, or an action commenced."

By the statute of 1888, the Legislature has made only two changes in the law, both of which changes are material, viz.: The word "open" is omitted from the expression, "that on all other open acounts," so that the pre-

scription of three years is now applicable to actions "on all other accounts," whether open or closed by an acknowledgment; and, after the expression, "from the time there has been an account acknowledged," the Legislature has inserted the words, "in writing," so that the prescription is interrupted only when there has been "an account acknowledged in writing, a note or bond given or an action commenced."

Before the article was amended it was decided, several times, that a verbal acknowledgment of a debt represented by an open account would convert it into a closed account, or an account stated, subject to the prescription of 10 years, under article 3544 of the Civil Code, declaring that all personal actions except those theretofore enumerated are subject to the prescription of 10 years. The decisions were in accord with the precise language of article 3538 before it was amended, for two reasons; First, because the acknowledgment was not required then to be "in writing"; and, second, because the prescription of three years was then applicable only to "open accounts," not to any or "all other accounts." In other words, when an open account was acknowledged by the debtor, it ceased to be an open account, and became, as the decisions held, a closed account, or account stated, or an acknowledged account. See Erwin v. Lowry, 2 La. Ann. 314, 46 Am. Dec. 545; Succession of Harrell, 3 La. Ann. 324; Crone v. Citizens' Bank, 28 La. Ann. 449; Boullt v. Sarpy, 30 La. Ann. 496; People's Bank v. Girod, 31 La. Ann. 592; Utz v. Utz, 34 La. Ann. 752; Bank v. Evans, 43 La. Ann. 372, 9 South. 44.

We are bound to assume that the Legislature, in amending article 3538 of the Civil Code by the statute of 1888, had in mind the jurisprudence, construing the article as applicable only to "open accounts," and declaring that a verbal acknowledgment had the effect of taking them out of the category of "open accounts" and converting them into closed accounts, or accounts stated, subject to the prescription of 10 years. And, in my humble opinion, we ought to give the act of the Legislature its very plain and simple meaning.

The ruling in Henry Block Co. v. Papania, 121 La. 683, 46 South. 694, cited in the majority opinion in this case, is not authority for the doctrine that, when an open account has been acknowledged in writing, it is subject to the prescription of 10 years. The only question propounded for decision in that case was whether a verbal acknowledgment of an open account interrupted the prescription of 3 years. At the very outset of the opinion, the court said:

"In the application for the writ of review, plaintiff declares that the 'sole question presented is one of law, viz. whether or not a verbal promise to pay an open account, made before prescription has accrued, is sufficient to interrupt the prescription; which should be answered in the affirmative.'"

The court did answer the question in the affirmative, maintaining that the verbal acknowledgment of the open account had interrupted the prescription of 3 years. The decision, in my humble opinion, was contrary to the language of the statute 1888; but we have no occasion for overruling it now, because it is not appropriate to the question presented in this case.

The ruling in the case of Block Co. v. Papania ignores the omission of the word "open" in the amending statute, which declares that all accounts, whether open or acknowledged, are subject to the prescription of three years. I believe that the error resulted from the fact that the same error was committed in some of the recently annotated editions of the civil code. The publisher of Merrick's edition, for example, sent out a list of errata, to be pasted in, calling attention to this erratum:

"Art. 3538, at the top of page 1099, the word 'open,' both in the headline and in the body of the article, should be stricken out."

The error of the ruling in the Block Case is so manifest that I can see no justification nor reason for perpetuating it.