OVERTON, J.
 

 The administrators of the succession of William R. Spann filed, in September, 1928, the final account of their administration. The administrators carried on the account, as due by the succession, the claims of Kenneth R. Phillips and Dickson & Denny. Phillips’ claim is for $4,000, alleged to be due as his portion of the proceeds of fire insurance policies on the plant of the Gulf Can Company, which was destroyed by fire. The claim of Dickson
 
 &
 
 Denny is for a balance of $3,000, alleged to be due for legal services rendered in the spring of 1924. Both of these claims are opposed by certain creditors of the succession. The succession is insolvent.
 

 The allowance of the claim of Phillips depends upon whether he had an interest in the Gulf Can Company’s property. If he did not legally acquire an interest therein, then he has no claim arising out of the proceeds of the insurance collected by the deceased.
 

 It is not disputed that up tt> July, 1926, Spann was the sole owner of the Gulf Can Company. He had not made a success in conducting its business up to that time, and called Phillips and H. A. Shubert into his office. Phillips was his son-in-law, and had been working for him, and Shubert had also been in Spann’s employ. In the 'course of the conversation, which was concerning the financial losses of the plant, Spann said that by reason of his relationship to Phillips and the help he had given, and the interest he had taken, in the business, he would give him
 
 *415
 
 a one-fourth interest in it, or take him as a partner, owning such interest, and that he would also take Shubert as a partner, and give him a similar interest in the business.
 

 Both parties accepted the proposition and began working for the plant under the new terms, and continued to do so until the plant was destroyed three months later by fire.
 

 Nothing was said as to the value of the services that Phillips had rendered to the business. Phillips, himself, places no estimate upon them in his evidence. It appears, however, that he rendered services to Spann in connection with the plant from August, 1925, up to the time of the foregoing conversation, in July, 1926. These services consisted in doing the office work, including the clerical work, except the bookkeeping, in attending to the shipping, in receiving all orders and attending to them, for which Phillips received no salary.
 

 While such work may be far more, in some instances, than one man can attend to, yet in the present instance the work was far from being arduous or time absorbing. Nearly all of the output of the plant was shipped in carload lots. During the period of Phillips’ connection with the business its shipments did not exceed 20 carloads. Therefore, there could not have been very much correspondence to attend to, very many orders to receive and fill, and it is certain that there was not much shipping, requiring attention. The rendition of these services could not have required much time, for Phillips during that period held under another, what was practically an all-day position at a salary which was at first $150 a month and then $200.
 

 The plant, in which Phillips claims he had a one-fourth interest, was worth approximately $16,000. The services rendered by him, even if we include those rendered for the short period of three months after the alleged donation, which were of the same character as those rendered before, were worth considerably less than $2,000. The one-fourth interest in the plant clearly exceeded one-half of the value of the services rendered, for which it is urged the donation was made.
 

 It is the contention of the opponents, assuming that the donation was made, that it is null and void, as not having been clothed with the-forms prescribed by law.
 

 There are three kinds of donations inter vivos, the one that is purely gratuitous, or which is made without condition and merely from liberality; the one that is onerous, or which is burdened with charges imposed on the donee; and the one that is remunerative, or the object of which is to recompense for services rendered. Civ. Code, art. 1523.
 

 Article 1524 of the Civil Code provides that “the onerous donation is not a real donation, if the value of the object given does not manifestly exceed that of the charges imposed on the donee." Article 1525 of the Civil Code reads that “the remunerative donation is not a real donation, if the value of the services to be recompensed thereby being appreciated in money, should be little inferior to that of the gift.” Article 1526 of the Civil Code provides that “in consequence, the rules peculiar to donations inter vivos do not apply to onerous and remunerative donations, except when the value of the object given exceeds by one-half that of the charges or of the services.” Article 1536 of the Civil Code reads that “an act shall be passed before a notary public and two witnesses of every donation inter vivos of immovable property or incorporeal things, such as rents, credits, rights or actions, under the penalty of nullity.” Article 1538 of the Civil Code prescribes that even as to movable effects a donation thereof will not be valid, unless
 
 *417
 
 an act be passed of the same before a notary and two witnesses. There is but one exception to article 1538, and that exception is made by article 1539, which provides that “the manual gift, that is, the giving of corporeal movable effects, accompanied by a real delivery, is not subject to any formality.” See Kirkpatrick v. Finney, 30 La. Ann. 223; Ackerman v. Larner, 116 La. 101, 116, 40 So. 581.
 

 The donation of an interest in a factory is, by reason of the nature of the object donated, not such property, to say the least, treating the gift as the donation of an interest in movable property, as may be transferred by manual gift, and if the donation be treated as one, purporting to transfer an interest in immovable property, it is even more manifest that the interest could not be thus transferred.
 

 Since the value of the thing donated clearly exceeded one-half of the value of the services, the rules peculiar to donations inter vivos are applicable to the donation, made, in this instance, and hence the donation should have been passed before a notary and two witnesses. However, the donation was not so made, but was- made verbally. Therefore, under the express provisions of the law, the donation, if made, was a nullity, and hence Spann did not become indebted to Phillips by reason of his not having accounted to him for any part of the insurance collected.
 

 As to the claim of Dickson & Denny, this claim, as we have said, is made for the balance of an attorney’s fee, alleged to have been earned in the spring of Í924. On January 3, 1925, Spann issued a cheek to the order of Denny, of the firm of Dickson & Denny, for $2,535, $2,000 of which, it appears from parol evidence, admitted over objection, was given to be applied on the fee of $5,000, alleged
 
 to
 
 have been earned by Dickson & Denny. The check was indorsed in blank by Denny and also by his firm, and was paid on January 5, 1925, two days after it was issued.
 

 Opponents plead the prescription of three years, established by article 3538 of the Civil Code, against the balance carried on the final account of the administrators. This article, as amended by Act 78 of 1888, provides, inter alia, that actions by attorneys for their fees are prescribed by 3 years. It further provides that all other accounts are prescribed by 3 years. It also contains a provsion reading that “this prescription only ceases from the time there has been an account acknowledged in writing, a note or bond given, or an action commenced.”
 

 It has been held that the purpose of the amendment made to article 3538 of the Code by Act 78 of 1888 was to make the prescription of 3 years applicable to accounts stated ■or rendered and verbally or tacitly acknowledged, and thereby to remove such accounts from the prescription of 10 years, under which it was theretofore held that they came. Sleet v. Sleet, 109 La. 302, 308, 33 So. 322; Henry Block Co., L’td., v. Papania, 121 La. 683, 46 So. 694.
 

 Dickson & Denny rely upon the check, mentioned above, and upon the evidence of. both members of their firm, to show that the giving of the check was a payment on account and an implied written acknowledgment of the balance claimed, and therefore, to show that the prescription of 3 years is not applicable to their claim. If no effect be given to the parol evidence, received over objection, to show these things, then there will be nothing to show an acknowledgment of the balance now claimed, and the prescrip
 
 *419
 
 tion of 3 years will be applicable, since over 4 years elapsed* between the maturity of tire alleged indebtedness and the placing of the balance upon the final account of the administrators. There is nothing, it may be said, upon the face of the check, to show what it was given for, or to show that it was a payment on account. In fact, it appears in print on the face of the check that it was issued in full settlement of account, without identifying the account.
 

 In considering, the admissibility of the parol evidence offered, it must be borne in mind that it is parol evidence offered against a dead person, and this was the basis of the objection urged.
 

 Article 2278 of the Civil Code prohibits, among other things, the reception of parol evidence “to prove acknowledgment or promise of a party deceased, to pay any debt or liability, in order to take such debt or liability out of prescription, or to revive the same after prescription has run or been completed.” Subdivision 2.
 

 In the cases of Harrison v. Dayries, 23 La. Ann. 216, Succession of Kugler, 23 La. Ann. 455, and McGinty v. Succession of Henderson, 41 La. Ann. 383, 6 So. 658, it was held that, under article 2278 of the . Civil Code, a written promise to pay a debt, or a written acknowledgment of a debt, having been .proved, parol evidence was admissible to identify the debt with the written promise. In those cases,.however, it was clear that the written acknowledgment or promise had reference to an entire debt, claimed as due by the creditor, or that the payments made were payments on account, and intentionally made as such, thereby showing that the debtor recognized that, in making .the payments, a larger amount was due. Here, however, we are unable to infer that the payment was made on account. The check, upon its face, although that part of it is in print, negatives such an idea. The clause in the check to the effect that the check was given in full payment necessarily confines the acknowledgment to the amount paid. Therefore, to permit Dickson & Denny to show by parol evidence that the payment did not confine the acknowledgment to the amount paid, but extended the acknowledgment to an additional amount, claimed to be due, would be to permit them to show this by evidence prohibited by law, for it would be to permit the showing of the extension by parol evidence of the acknowledgment beyond its written confines to take the indebtedness, said to remain unpaid, out of prescription, as against a person deceased. In our view, the trial judge correctly disregarded the evidence introduced for that purpose in deciding the case on the merits. The evidence was inadmissible.
 

 From the foregoing it is apparent that in our opinion the plea of prescription of 3 years should be sustained. Of course, the fact that the administrators placed the claim on their final account, after prescription had accrued, did not have the effect of reviving the claim.
 

 The trial court amended the final account by striking from it the two claims in contest here, that is, by rejecting them.
 

 The judgment is affirmed.