"(2) In reading the Payne survey in the language in which it is written—that of a United S rveyor reporting to the Unit Office.

"( he calls of Payne's field note of his work and particular 'ayne's call for the southeast ship 19 S. R. 25 E. as the begi Payne's survey of T. 19 and nd T. 20 S. R. 27 E., and as c surveys.

"( the adjoining boundaries of r identical with the boundaries veys.

" Payne's calls for course and his point of beginning— the r of T. 19 S. R. 25 E.

" unsurveyed lines indicative on Payne's plats as not cor ey.

' he unsurveyed shore lines on merely as boundary lines of reference thereto and not as ocation of the survey."

 stated, I dissent.

52 So. 510

UPPLY CO. v. EUGENE MAN, Inc., et al.

No. 32395.

Nov. 27, 1933.

Rehearing Denied Jan. 2, 1934.

Spearing & McClendon, of New Orleans, for appellant.

Milling, Godchaux, Saal & Milling and Nat B. Knight, Jr., all of New Orleans, for appellee.

ST. PAUL, Justice.

This is a suit by a materialman against a contractor and the surety on the contractor's bond. The defendant Eugene Freeman, Inc., had a contract for electrical work on a hotel in Monroe, La. The amount of the contract was $18,220. The United States Fidelity & Guaranty Company was surety for Freeman for the amount of the contract. This suit is for materials furnished by the plaintiff to Freeman for work under the contract amounting to $11,142.48.

There was judgment below for said amount against the contractor and its surety, the United States Fidelity & Guaranty Company, and the surety alone appeals, setting up two special defenses, the merits of which are the sole matters for consideration.

## I.

The first special defense is that, for a consideration (the giving of additional security in the shape of pledged policies of life insurance), plaintiff granted the contractor time for paying the amount, to wit, 11 months and 20 days, and agreed to file no suit against the contractor or record any lien against it until the expiration of said delay.

It is true that ordinarily under R. C. C. art. 3063 (formerly article 3032), the prolongation of the terms granted to the principal debtor without the consent of the surety operates a discharge of the latter; but article R. C. C. art. 3063 (formerly article 3032), applies only to sureties for obligations payable at a time specified. Provan v. Percy, 11 La. Ann. 179.

Nor does it apply to a general surety on a contractor's bond for labor and materials to be furnished at a future time by persons then unknown and on terms which could only be agreed upon later. W. W. Carre Co. v. E.

J. Stewart & Co., 166 La. 317, 117 So. 238; United States Fidelity & Guaranty Co. v. United States, 191 U. S. 416, 24 S. Ct. 142, 48 L. Ed. 242.

Moreover, Act No. 298 of 1926 (the General Building Contract Law), under which the surety bond herein sued upon was given, provides (section 3) that, "where the owner has required the bond herein provided, the said surety thereon shall be liable in solido with the contractor for all labor and materials used in said work * * * as to which labor and material said surety shall be bound to the same extent as the said contractor, undertaker, master-mechanic, or engineer, or other person undertaking such work."

And again (section 6) that "in all cases where surety has been furnished, as between such surety and any claimant for labor or material or any sub-contractor, journeymen, cartmen, truckmen, or mechanic, the surety shall be entitled to make only the same defense as the contractor for whom he signed as surety is authorized to make."

■ And, since the bond herein given is a statutory bond, we must look to the statute under which the bond was given to find the conditions of the bond; for whatever is written in it, not required by the statute, must be read out of the bond, and whatever is not expressed in it, but which ought to have been incorporated, must be read into it. Murphy Iron Works v. United States Fidelity & Guaranty Co., 169 La. 163, 124 So. 768; citing Davis v. West Louisiana Bank, 155 La. 245, 99 So. 207; Id., 155 La. 252, 99 So. 210; Miller v. Bonner, 163 La. 332, 111 So. 776.

■ And, since the special defense herein set up could not be urged by contractor, it follows that neither can it be urged by the surety on the contractor's bond. Shreveport Mut. Building Ass'n v. Whittington, 141 La. 41, 74 So. 591; American Creosote Works v. Aetna Casualty & Surety Co., 167 La. 601, 120 So. 21; Madison Lbr. Co. v. Bachemin et al., 166 La. 1066, 118 So. 141; Haynesville Lbr. v. Casey, 165 La. 1065, 116 So. 559; Fidelity Homestead Ass'n v. Kennedy & Anderson, 158 La. 1059, 105 So. 64; Audubon Homestead Ass'n v. Stef Lbr. Co., 158 La. 1054, 105 So. 62; Truscon Steel Co. v. B. & T. Const. Co., 170 La. 1083, 129 So. 644.

II.

■ The other special defense is a complaint about the imputation of payments. Appellant urges that nine payments aggregating $19,200 made by the contractor to the plaintiff should have been imputed so as to extinguish primarily the claim herein sued upon (aggregating net $11,142.48) as the debt which was most burdensome to the contractor because it was secured. The circumstances of this case are as follows:

For many years prior to August 15, 1930, the contractor, Freeman, was a customer of the plaintiff and had a running account with him. On August 15, 1930, the balance due plaintiff by the contractor on said open account was $18,802.35. On the next day, to wit, on August 16, 1930, the contractor bought of plaintiff his first bill on account of the Monroe hotel job amounting to $3,277.49, and increasing his debit balance on open account to $22,079.84. It is clear that, had all further purchases ceased, the $19,200 paid on account by the contractor to plaintiff would have sufficed to pay in full the old balance of August 15, 1930 ($18,802.35) and leave $397.65 ap-

plicable to the bill of August 16, 1930 (the next oldest item on the account), thereby reducing it to $2,875.84 instead of $3,277.49. So that, in any event, appellant is entitled to have judgment giving him credit on the amount allowed by the lower court for $397.-65, with legal interest thereon from the due date of said bill of August 16, 1930 (to offset the interest allowed by the lower court on the whole of said bill of August 16, 1930).

But the purchases did not cease. Between August 25, 1930, and July 18, 1931, the contractor purchased from plaintiff 60 other items aggregating $7,864.99 for account of the Monroe job and during the same period 305 items aggregating $26,675.99 for other account; all 365 items being charged, as the same were purchased, on a single running account, and all credits being placed to that account; a copy of which account showing in detail all items of debit and credit and balance from day to day being sent regularly at monthly intervals to the contractor and received by him without objection.

So the question is whether or not, under the circumstances, the $19,200 paid by the contractor to the plaintiff, on open account as above said, should be imputed to the oldest items of said account, with the result indicated above, or imputed primarily to the items furnished on the Monroe job by appellant.

In our opinion, the payments must, under the circumstances recited, be held imputed to the oldest debt on the account. The debtor has the first right to make the imputation; if he does not exercise this right, it then appertains to the creditor; if neither make the imputation, the law makes it for them. Aft-

er the debtor accepts a receipt in which the creditor has made an imputation, the imputation become irrevocable, unless there has been fraud on the part of the creditor. Bloodworth v. Jacobs, 2 La. Ann. 24; Grand Lodge v. Murphy Const. Co., 152 La. 123, 92 So. 757; R. C. C. arts. 2163, 2166.

Hence, if the debtor do not impute his payments when made, the creditor may do so, and, if he makes such imputation and informs the debtor thereof by account rendered which the debtor receives without objection, he cannot afterwards question the imputation. Flower & King v. O'Bannon, 43 La. Ann. 1043, 10 So. 376; McLear v. Hunsicker, 30 La. Ann. 1225; Robson & Allen v. McKoin, 18 La. Ann. 544; Dunbar v. Bullard, 2 La. Ann. 810; Bloodworth v. Jacobs, 2 La. Ann. 24; Baker v. Smith, 44 La. Ann. 925, 11 So. 585.

And general credits on open account stand as payments imputed on the oldest items of said account, unless some other imputation be clearly indicated. Forrey v. Strange, 158 La. 941, 105 So. 21; Harman v. Legrande, 151 La. 253, 91 So. 726; Houeye v. Henkel, 115 La. 1066, 40 So. 460; Sleet v. Sleet, 109 La. 302, 33 So. 322; Dinkgrave's Succession, 31 La. Ann. 703.

Calatex Oil Co. v. Smith, 175 La. 678, 694, 144 So. 243, has no application. In that case there was no direction by the debtor as to how the payment should be imputed. There was no receipt given by the creditor showing how the imputation would be made. There was no understanding between the debtor and the creditor as to how the imputation should be made. There was no account given by the creditor and acquiesced in by the debt-

or showing how the imputation had been made.

In this case the contractor received regularly and without objection or comment statements showing general credits on open account and the balance due by him from day to day and from month to month as the statements were received by him.

We are therefore of opinion that the judgment appealed from is correct except as to the credit of $397.65 (and interest) hereinabove set forth.

### Decree.

For the reasons assigned, the judgment appealed from is amended so as to allow the appellant credit thereon for $397.65, with legal interest from September 15, 1930. And, as thus amended, said judgment is affirmed; plaintiff to pay the costs of this appeal and appellant to pay the costs of the lower court.