## MILAM'S SPOT CASH WHOLESALE HOUSE v. NOMEY.
### No. 4819.

Court of Appeal of Louisiana.
Second Circuit.
May 4, 1934.

A. A. Moss, of Winnfield, for appellant.

H. W. Ayres, of Jonesboro, for appellee.

TALIAFERRO, Judge.

This suit is for balance on open account. It is alleged that between January 1, 1931, and April 9, 1931, plaintiff, a wholesale merchant in Winnfield, La., sold and delivered to defendant, a retail merchant at Jonesboro, La., goods, wares, and merchandise amounting to $881.14, and that he had paid thereon $681.99, all of which, it is alleged, is fully shown by sworn account attached to, and made part of, the petition. Notwithstanding the account referred to was actually attached to and filed with the petition, defendant moved the court to require plaintiff to file and furnish a "complete itemized statement of the account of (on) which he pretends to sue," alleging that until he has had oyer thereof he could not plead or answer. Complying with the court's order, plaintiff promptly filed what is referred to as an "itemized statement of account" against defendant, covering the period from April 2, 1931, to December 31 of that year, to which was attached some copies of invoices of goods sold defendant.

Answer was then filed. Defendant denied that he is indebted unto plaintiff for any amount. He admits he purchased some merchandise from plaintiff, but denies he purchased as much as alleged, and avers he paid for all he purchased. He also filed, in the alternative, a plea of prescription of three years in bar of recovery of any item or charge on the account bearing date three years or more prior to June 24, 1933, the date this suit was filed. This plea was referred to the merits, and, after the trial of the case, was sustained and the suit dismissed.

Plaintiff appealed.

This suit, in its inception, was on an account against defendant, covering the months of January, February, March, and April, 1931. The first debit on the account attached to and made part of the petition is as of January 1, "Balance, $88.85," then follows seventeen debit amounts strung out over the first three months of 1931 and to April 9, the last one appearing thereon. After striking a balance on the account, the debit amount, including the first charge thereon, $88.85, is $199.95, the amount sued for.

The account filed in pursuance of the prayer for oyer begins on April 2, 1930, and runs to December 31st, when a balance is struck. The total of the debits thereon is $931.90 and credits $843.05, leaving a balance due by defendant of the $88.85 appearing on the account originally filed with the suit. The field of inquiry touching the relations between plaintiff and defendant was extended to cover their dealings from April 2, 1930, to April 9, 1931, without objection of either side, and, regardless of whether the suit originally could be construed to embrace their dealings during the year 1930, there can now be no doubt that the pleadings have been so enlarged by reception of unopposed testimony that the account for this year was and is now properly before the court.

Plea of Prescription.

As this suit was filed on June 24, 1933, this plea cannot possibly affect any charge or debit item on the account subsequent to June 24, 1930. Therefore the scope of its effect is necessarily confined to those charges on the account between April 2, 1930, and June 24, 1930. The total of charges on the account to June 24, 1930, amounts to $419.87. Payments admittedly made by defendant to August 25, 1930, total $508.81. Therefore, imputing these payments to the oldest items on the account, it follows that on August 25th the account to June 24th had been fully and completely paid. The account also discloses that purchases charged thereon from October 28 to December 31 amounted to $106.21, whereas the balance due on the account at end of the year was only $88.85. It follows that, as a matter of fact, payments made on

468

the account extinguished all debts thereon to October 28th, with a few dollars to spare. Payments made on open account are, in the absence of instructions or legal reasons to the contrary, imputed to the oldest charges thereon. Civil Code, art. 2166; Harman & Stringfellow v. Legrande et al., 151 La. 253, 261, 91 So. 726; Houeye v. Henkel et al., 115 La. 1066, 40 So. 460; Sleet v. Sleet, 109 La. 302, 33 So. 322.

Therefore the plea of prescription was erroneously sustained by the lower court.

### The Merits.

■ Defendant has been a patron of plaintiff since it began business, over four years before this case was tried. Their relations all along, even to the date this case was tried, had been uniformly cordial. After this controversy arose, he continued to purchase from plaintiff much of the merchandise he sold from his store. When the dispute between them arose in March, 1931, a new account was opened between them, leaving the old one open for adjustment, and we infer that all goods purchased thereafter have been fully paid for. The amount sued for herein represents the balance due when the dispute arose. It appears that George Nomey, brother of defendant, is also engaged in the mercantile business in Jonesboro, and was a patron of plaintiff, and that defendant regularly prepared and signed checks for George, against his bank account, which were sent to his (George's) creditors against his account with them. Plaintiff erroneously gave defendant credit for a check of George's for $199.40, which virtually balanced defendant's account, only lacking 55 cents. When this error was discovered by George, he, naturally, exacted a reckoning. His account was properly credited with the check and defendant's charged therewith, which was proper. It is intimated, not without some support in fact, that the shifting in the condition of the brothers' accounts, necessitated by a rectification of said error, is the basis of defendant's inability to see wherein he owes plaintiff any amount.

Those portions of defendant's books of account containing the account kept by him of his purchases from and payments to plaintiff were introduced in evidence, but are not in the record before us. From the somewhat vague and uncertain testimony of defendant, we are unable to determine specifically wherein his account and that kept by plaintiff differ. He does make it clear that according to his own record he owes plaintiff nothing. It does not appear that he is skilled and trained in the art of bookkeeping. In addition to selling goods to defendant directly from their warehouse in Winnfield, plaintiff, to supply his needs, would have drop shipments made to him, by rail or otherwise, from time to time. When this was done, defendant received the goods from the carrier, and plaintiff charged him with the cost thereof. It also appears that defendant has charged himself with amounts supposed to have been taken from invoices rendered by plaintiff, but which do not appear on plaintiff's records. This may be accounted for from the fact that on some days defendant would make more than one purchase, necessitating issuance of more than one invoice, and he only having charged himself, inadvertently, with one. If this were not true, defendant would be in the position of having charged himself with the price of goods he never purchased. He denied receiving several of the deliveries plaintiff had him charged with, but it is established that he paid, by his own check, the exact amount called for by such charges. His record did not show receipt of several drop shipments made to him, but he would not deny he had received same from the railway company.

■ The testimony in this case is far from satisfactory in many respects. Plaintiff's bookkeeper is the only witness who testified for it, while defendant alone testified for himself. We are not impressed with a willful purpose on his part to escape payment of any part of the account sued on. He is confused, we think, by relying too much on his own memory and his own crude system of bookkeeping. After all, it appears fairly clear that there were three drop shipments, aggregating $187.50, which defendant could not be convinced he had received. These items really make up the bulk of the difference between his account and that of plaintiff. He says that, if delivery of these shipments to him can be established, he will pay for them. So far as his liability therefor is concerned, when the shipments were consigned to him and delivered to the carrier, this was a delivery to him, and his responsibility for the price became thereby fixed, and this regardless of whether the carrier actually delivered same to him.

■ Plaintiff's bookkeeper's testimony made out a prima facie case on its account. This was supported by other testimony in the case. Defendant pleaded payment of the price of all goods delivered to him. He carried the burden of proving the verity of the plea. He has not done this.

For the reasons assigned, the judgment of

the lower court is annulled, reversed, and set aside, and it is now ordered, adjudged, and decreed that plaintiff have and recover judgment against defendant, S. A. Nomey, for $199.95, with 5 per cent. per annum interest thereon from May 1, 1931, until paid and costs of this suit.