## COMMERCIAL NAT. BANK OF SHREVE-PORT v. McDANIEL.

### No. 4846.

Court of Appeal of Louisiana. Second Circuit.

June 29, 1934.

Rehearing Denied July 16, 1934.

Chandler & Chandler, of Shreveport, for appellant.

A. J. Murff and D. H. Perkins, both of Shreveport, for appellee.

TALIAFERRO, Judge.

Defendant, a colored man, on May 8, 1923, purchased 40 acres of land in Bossier parish from R. V. Kerr, for which he agreed to pay $341; to represent the price he executed his three promissory notes, due, respectively, one, two, and three years, with 8 per cent. interest from date. The notes were secured by mortgage and vendor's lien on the land, were payable to the order of the maker and were by him indorsed in blank. The act of sale and mortgage was recorded in the mortgage records of Bossier parish on the day of its execution. It was reinscribed therein September 28, 1933. Said notes were acquired by G. W. Smith, a merchant of Bossier parish, and the one first maturing was paid by defendant in his hands, and was delivered to defendant. Thereafter, the record not disclosing the date or near date, Smith pledged the other two notes to plaintiff as collateral security to his own note obligation to it. This occurred, however, prior to May 7, 1928, because on or before this date the two notes were withdrawn from the plaintiff bank, on trust receipt by Smith or his counsel, in order to have a renewal indorsement thereon signed by defendant, who then lived in Bossier parish. Smith, presumably, defaulted on his obligation to the bank, and on May 8, 1933, the present suit on the two mortgage notes was filed. The suit is to foreclose the mortgage by ordinary process. Plaintiff alleges that it is the holder and owner of said notes for value; and that they were acknowledged by the maker, defendant herein, on May 7, 1933.

Defendant first filed pleas of prescription of five and ten years, respectively, as to the notes sued on, and the mortgage and vendor's lien sought to be foreclosed. The mortgage was reinscribed after this plea was filed and the petition amended to show such fact. These pleas were referred to the merits of the case.

Defendant then answered, with reservation of rights under his plea of prescription. He admits execution of notes sued on and mortgage and vendor's lien securing same, and admits that he wrote his name on back of the two notes on May 7, 1928, for the sole purpose of acknowledging same, but specially denies that there was any notation or indorsement of extension of maturity of the notes thereon when he signed the acknowledgment, and denies that there was any understanding or agreement between him and the holder of said notes as to any extension of time to pay the notes. He specifically denies that plaintiff is the holder of the notes in good faith and before maturity. He affirmatively avers that he paid the first two notes maturing while held and owned by G. W. Smith, who failed, after many promises to do so, to deliver to him the second one paid, which, he avers, occurred in 1925. He explains that on May 7, 1928, when the notes were presented to him to acknowledge, he again asked Smith to deliver the paid one to him, to which Smith replied that he did not exactly know how he stood with him at the time, but urged him to acknowledge the note, stating that in the fall he would settle up with him. Other reasons are assigned for him having signed, though reluctantly, the acknowledgment of the note he had paid. He further says, in the alternative, that should it be found that said note was not paid by him, that it, as well as the third one of the series, sued on, is prescribed on its face because more than five years have elapsed since the acknowledgment of May 7, 1928.

On the day the case was tried, plaintiff filed a plea of estoppel against defendant's plea of payment of one of the notes sued on. In view of the decision we have reached in the case, it is unnecessary that we pass on this plea. There was no action below on this plea prior to final judgment. While the case was under advisement of the court, defendant filed an exception of no cause and no right of action, and therein again pleaded that the evidence of plaintiff's mortgage having perempted for want of timely reinscription, its force and effect terminated, and that it was null and void as evidence of a mortgage or privilege, even between the parties.

The demands of plaintiff were rejected. This appeal is prosecuted by it.

### Plea of Prescription.

 It appears that the note of G. W. Smith, to which the notes sued on were attached as collateral security, held by plaintiff bank, was past due on or before May 7, 1928, because on or before this date he and his attorney, A. M. Wallace, Esquire, a reputable member of the bar of Bossier parish, appeared at the bank and the matter was discussed with Mr. P. C. Willis, one of the bank's vice presidents, who died before this suit was tried. Mr. Willis agreed to accept renewal note from Smith due the following fall, but required that the collateral notes be acknowledged by the maker, defendant herein. Both notes contain the following indorsements thereon, viz.:

"——— Interest paid to ———
"——— Note extended to 11–15–28
"The indebtedness shown by the within is hereby acknowledged this May 7th, 1928.
　　　"[Signed] Claudius McDaniel."

Two different stamps were used in impressing these notations or memoranda upon the back of the notes. One covered the extension and the other the acknowledgment. Whether the notation showing that the maturity of the note had been extended to November 15, 1928, was placed thereon when the acknowledgment was, is the most seriously disputed question of fact in the case. Counsel of defendant concede that if it was placed thereon before defendant affixed his signature below, the acknowledgment that the plea of prescription as to the notes is not well founded, because this suit was filed several months before November 15, 1933. Defendant is positive there was nothing on the back of the notes about an extension when he signed the acknowledgment on May 7, while Mr. Wallace is equally certain that the notation was stamped thereon by Mr. Willis or an employee of the bank and the numerals "11–15-28" written in with ink before the notes were withdrawn on trust receipt for defendant's signature. For some reason, not touched on in or out of the record, neither side called Mr. Smith as a witness. He was available to both sides. His testimony would have material bearing upon this issue. The failure to call him, under the circumstances of the case, should not be weighed against one side more than the other.

Defendant charges that the extension memoranda were crowded in between his original indorsements near the top of the notes and the first line of the stamped acknowledgments he signed, after he signed the acknowledgments, but a critical examination of these stamped indorsements discloses nothing suspicious as to their arrangement. The alignments are regular and identical on each note, and the space between defendant's original

signature and the words "interest paid to," and the space between the words "note extended to" and the top line of the acknowledgment, on each note, is practically the same. This impels us to believe that the stamped indorsements were placed on the notes, in point of time, in the order in which they appear on the notes. If this were not so, the stamped acknowledgments would have likely been closer to defendant's original signatures than they now are. And, again, Smith having succeeded in securing an extension of his own note until the fall of the year (probably November 15), it was but natural for Willis, at the time, to indorse the extension on defendant's notes to correspond with the due date of Smith's renewal note. To have done so would have reflected a regular and customary method of closing out such a transaction. A person discharging the important duties of vice president of a large bank is presumed to know that an extension of payment of this character, to be binding, must be concurred in by both the maker and holder of the note. It is not binding on either until both agree to it. To say that the extension was placed thereon after defendant signed the acknowledgment is to prefer a charge of fraud and unfair dealing against some one having a selfish interest to advance regardless of means.

Mr. Wallace says that this was the only transaction he handled with plaintiff as Smith's attorney. There is good reason to believe that the facts of the matter impressed him forcefully and were not effaced by the passing of several years. On the other hand, defendant, being an uneducated colored farmer, would not likely remember exactly what was on the back of the notes when he signed the acknowledgment. It would be exceedingly rare for one of his station in life to recall the details of such a matter after the lapse of over five years. The extension was a stipulation in his favor for it granted him over six months additional time to discharge obligations already long past due, and this, too, without payment of any of the accrued interest, so far as the record discloses. He certainly would not have objected to the extension. The additional time the extension prolonged the life of the note beyond that effected by the acknowledgment would not have influenced him to the least extent.

We therefore hold that when defendant signed the acknowledgment on the notes, the extension was thereon and that his signature superinduced his assent to the extension. The plea of prescription against the notes is therefore overruled.

### Of the Peremption of the Mortgage and Vendor's Lien.

It is the contention of defendant that, inasmuch as over ten years elapsed from the inscription of this act and its reinscription in the mortgage records, the instrument itself perempted and ceased to have any effect whatever, even between the parties thereto. We do not agree with this position. The primary obligation, the notes, to which the mortgage and vendor's lien were accessory, at no time were prescribed. As long as these notes were kept alive, the accessory obligation securing their payment continued in full force and effect as between the parties, and this without reinscription. A conventional mortgage does not prescribe in ten years. Factors' & Traders' Ins. Co. v. Warren et al., 37 La. Ann. 85.

Article 3369 of the Civil Code provides:

"The registry preserves the evidence of mortgages and privileges during ten years, reckoning from the day of its date. * * *

"The effect of the registry ceases in all cases, even against the contracting parties, if the inscriptions have not been renewed within the respective periods of time above provided, in the manner in which they were first made; and in all cases, the reinscription of the mortgages and privileges shall preserve their effect for ten years from the date of the timely renewal as above provided."

It will be noted that this law simply says that the "effect of the registry" of the mortgage, not the effect of the mortgage itself, ceases after ten years unless reinscription takes place. This construction was placed on this article of the Code in Harman & Stringfellow v. Legrande et al., 151 La. 253, 91 So. 726, which, so far as we know, is the latest and last judicial expression on the question.

The same construction was given it in: Police Jury of West Baton Rouge v. Bergeron, 11 La. Ann. 390; Shepherd v. Orleans Cotton Press Co., 2 La. Ann. 100; Liddell's Ex'rs v. Rucker et al., 13 La. Ann. 569; Factors' & Traders' Ins. Co. v. Warren, 37 La. Ann. 85.

In Seyburn v. Deyris et al., 25 La. Ann. 486, it was held:

"There is no force in the objection that the mortgage perempted for want of reinscription within ten years. Neither inscription nor reinscription is necessary, so far as

the parties to the mortgage or their heirs are concerned."

. We are aware that there is a line of decisions which apparently, if not in reality, hold contrary to the doctrine laid down in the cited cases, but we think, and hold, that the correct interpretation of the law on the subject is that appearing in the most recent decision of the Supreme Court, Harman & Stringfellow v. Legrande, supra.

It is elemental that registry of acts of mortgage and other instruments affecting real estate is primarily done for the purpose of affording notice to third persons of the existence of such incumbrances. Civ. Code, arts. 3342, 3329, and 3347.

"Neither the contracting parties nor their heirs, nor those who were witnesses to the act by which the mortgage was stipulated, can take advantage of the non-inscription of the mortgage." Civ. Code, art. 3344.

This being true, How can it be said that it ceases to have any effect whatever, even as to and between the parties, simply because it is not rerecorded every ten years? It was binding without any recordation; it must be binding still though once recorded.

It has been held many times that if one suffers ten years to elapse without reinscribing his mortgage or lien, the rank of such is lost and a subsequent reinscription will give it effect only from such reinscription. See Louisiana Digest, vol. 5, p. 263; Murff v. Ratcliff, 19 La. App. 109, 138 So. 908.

### Plea of Payment.

Defendant had been a customer of Smith for some twenty years. He delivered to him annually the cotton produced by him. He says the proceeds of the cotton delivered to Smith in 1926 were sufficient to pay his account for that year and also the second note which fell due; and that Smith told him that the note was thereby paid. It was not delivered to defendant. It may have then been pledged to plaintiff at the time. The record does not disclose whether it was or was not then in its custody. The presumption is that plaintiff acquired the note before maturity and for value. Panhandle National Bank v. Alexander, 49 La. Ann. 1590, 22 So. 813.

It is contrary to good business and approved commercial dealings to acquire paper of this character while in default. Be this as it may, defendant, on May 7, 1928, acknowledged in writing that he owed the note, and this effectually precludes him from now setting up its payment, it being in the hands of a third person.

"Where a note or other evidence of indebtedness remains in possession of the payee the presumption is that the debt has not been discharged." Toups v. Brien, 1 La. App. 531.

### Ownership of Notes.

Defendant argues that, as it is not affirmatively established that Smith owes plaintiff any amount now, the suit was improperly brought and prosecuted by it; that as its title to the notes was only as pledgee, it devolved upon plaintiff to prove that there was some amount due it by Smith which the notes were pledged to secure. Plaintiff alleged that it was the holder and owner of the notes. Defendant, answering this allegation, denied that the plaintiff is the holder of said notes in good faith and before maturity. We construe this answer to say, not that plaintiff was not the owner and holder of the notes, but that it did not own and hold them in good faith and before maturity. The challenge is directed to the character of the ownership; not to the ownership itself. It is well settled that a pledgee may sue on a pledged note as "holder and owner" with the same effect as the true owner could do. Having once held the notes as pledgee, it is presumed, as long as they are in its possession, that Smith was due to plaintiff some amount which the pledge was intended to secure. We do not think there is any merit in this contention.

It is further urged that, as plaintiff did not specifically allege that the current of prescription on the notes had been interrupted by the extension of payment thereon, no evidence was admissible to prove the interruption. We do not think this contention tenable. The petition states that the notes are annexed to it and made a part thereof. There is nothing in the record to show that the notes were not so annexed. If not, defendant had the right to require their production before answering. When defendant filed the plea of prescription against the notes, a clear-cut issue was tendered thereby, and without formal answer or pleading by plaintiff, it had the right to offer any sort of legal testimony that would defeat the plea. Defendant carried the burden of sustaining his plea. When a prima facie case was made out by him, it devolved upon plaintiff to overcome this case by proving that defendant agreed to the extension indorsed on the notes, thereby interrupting the course

of prescription. Lowentritt v. Posey, 5 La. App. 449.

For the reasons assigned herein, the judgment appealed from is annulled, avoided, and reversed, and it is now ordered, adjudged, and decreed that plaintiff have and recover judgment against Claudius McDaniel in the sum of $227.33, with 8 per cent. per annum interest thereon from May 8, 1923, until paid and 10 per cent. of said amount as attorney's fees and cost.

It is further ordered, adjudged, and decreed that the mortgage and vendor's lien securing payment of said notes, principal, interest, and attorney's fees be and the same are hereby recognized, maintained, and rendered executory upon the property affected thereby, viz., southwest quarter of northeast quarter of section 4, township 17 North, range 11 West, in Bossier parish, La., and said property is hereby ordered seized and sold, according to law, without appraisement, to pay and satisfy this judgment, and all costs of suit.