liWICKER, Judge.
This appeal arises from a petition for writ of mandamus filed on behalf of St. Charles Mortgage & Loan, Inc. (plaintiff/appellant) against Charles J. Oubre, Jr., Clerk of Court and Recorder of Mortgages for the Parish of St. Charles (defendant/appellee). St. Charles Mortgage & Loan, Inc. (St.Charles) seeks the reinscription of a mortgage which was executed on April 23, 1985 and recorded April 24, 1985. St. Charles reinseribed the mortgage on October 30, 1995. The rein-scription of the mortgage was canceled by the Clerk on December 12, 1996 as untimely. Shirley Wilson Randall and Collins J. Randall, Jr. intervened on the basis the mortgage was executed by them in favor of St. Charles. They allege the mortgage had prescribed by April 24, 1995 prior to the reinseription on October 30, 1995.
St. Charles seeks to have the Clerk of Court reinscribe a mortgage which had been untimely reinscribed. St. Charles rein-scribed the mortgage October 30, 1995. The mortgage was executed April 23, 1984. Acts 1992, No. 1132, effective January 1, 1993 revised the subject matter of legislation on mortgages. Section 7 of Acts 1992, no. 1132 provides:
The provisions of this Act relative to the time for reinscription of mortgages are applicable only to those mortgages created on or after January 1, 1993. Mortgages and privileges created before January 1,1993 shall continue to be regulated by the *1021 laws in existence before January 1,1993. The procedure for reinscription of mortgages and privileges as set forth in Civil Code Articles 3328 through 3331 shall be effective as to all |2requests for reinscription filed on or after the effective date of this Act [emphasis added].
Former La. Civ.Code art. 3369 provided in part:
In all cases where mortgages and privileges, heretofore or hereafter recorded, secure the payment of an indebtedness, the whole of which matures less than nine (9) years from the date of the obligation, the registry preserves the evidence of such mortgages and privileges during ten (10) years, reckoning from the date of the obligation. The recordation in the mortgage records in which such an original instrument has been recorded of a written agreement, by authentic act or by private act duly acknowledge, entered into between the owner of the indebtedness and the owner of the property, extending the maturity of the secured indebtedness, or any part thereof, to a date more than nine (9) years from the date of the original obligation, shall have the effect of preserving the evidence of the original mortgage or privilege until six (6) years after the latest date to which the maturity has been so extended.
In all cases where mortgages and privileges, heretofore or hereafter recorded, secure the payment of an indebtedness, the whole or any part of which matures nine (9) years or more from the date of the obligation, the registry preserves the evidence of such mortgages and privileges until six (6) years after the date of the maturity of the note, bond or other obligation, or of the last installment thereof, if payable in installments, or until six (6) years after the date of the maturity of the last maturing note, bond or other obligation, if more than one, as fixed by the original instruments from which they sprung or with which they are identified. The recordation in the mortgage records in which such an original instrument has been recorded of a written agreement, by authentic act or by private act duly acknowledged, entered into between the owner of the indebtedness and the owner of the property, extending the maturity of the secured indebtedness, of [or] any part thereof, shall have the effect of preserving the evidence of the original mortgage or privilege until six (6) years after the latest date to which the maturity has been so extended.
On the recordation of any written agreement of extension of maturity, as provided for in this Article, the recorder of mortgages shall make marginal note on the inscription of the original instrument stating that the maturity has been extended and giving reference to the Book and Folio in which the agreement extending the said maturity has been recorded.
All mortgages and privileges affecting immovables shall be recorded only in the regular mortgage books. All distinctions heretofore made between the recordation of these mortgages and privileges in the regular mortgage books and the recordation of these mortgages and privileges in special or separate books are abolished, and the recordation, of these mortgages and privileges heretofore or hereafter made, whether in the regular mortgage .books or in special or separate books, shall have the same force and effect.
The effect of the registry ceases in all cases, even against the contracting parties, if the inscriptions have not been renewed within the periods of time above provided in the manner in which hthey were first made. In all cases the reinscription of the mortgages and privileges shall preserve their effect for ten (10) years from the date of the timely renewal, as above provided [emphasis added].
% % ‡ # ‡
In Schutzman v. Dobrowolski 191 La. 791, 186 So. 338 (La.1939) the Supreme Court considered a suit by a creditor to enforce a mortgage and to receive amounts owed on notes. The defendants argued that a mortgage which had not been reinscribed had no effect between the contracting parties. The court explained that article 3369 provided that “[t]he effect of the registry ceases” rather than the effect of the mortgage. The *1022 court overruled cases which had held “that a mortgage which is not reinscribed does not have any effect after ten years, even between the parties to the contract of mortgage.” Id. at 342. The court granted judgment in favor of the creditor and ordered the property seized and sold. The Schutzman court did not address the issue of whether the Clerk of Court could cancel the reinscription of an untimely filed reinscription.
The Schutzman court cited with approval Commercial Nat. Bank of Shreveport v. McDaniel, 156 So. 43 (La.App. 2nd Cir.1934) which explained that the mortgage was still effective between the contracting parties, although it had not been timely reinscribed.
In McDaniel the court ordered the seizure and sale of the property and payment on the notes. The McDaniel case did not consider the issue of whether the Clerk of Court could cancel an untimely reinscribed mortgage. It merely referred to prior case law which held that the untimely reinscription did not relate back to the original date of filing for ranking purposes.
The instant action is not one in which St. Charles is seeking to collect money due on notes nor to seize and sell immovable property secured by the notes. Had St. Charles sought to enforce its mortgage against the debtors, (assuming there was no other bar to enforcement), it is clear that it could do so since noninscription or nonreeor-dation of a mortgage has no effect between the contracting parties. Schutzman, supra.
In Brookshire v. Broussard, 326 So.2d 893 (La.App. 3rd Cir.1976), and Delta Sec. Bank & Trust Co. v. Byrnes, 415 So.2d 605 (La.App. 3rd Cir.1982) the third circuit held that a mortgage which is not timely reinscribed can be canceled from the public | ^records. However both of these cases also held that the mortgage was unenforceable as well as subject to cancellation. In contrast, the second circuit held that an enforceable mortgage could not be canceled because of the untimely reinscription. Security Nat. Trust v. Alexander, 621 So.2d 30 (La.App. 2nd Cir.1993), unit denied, 629 So.2d 1140 (La.1993).
The above-cited cases from the second and third circuits consider recordation and enforceability of a mortgage, between the contracting parties, to be equivalent. The Schutzman court, however, made a distinction between enforceability between the contracting parties and recordation. Additionally, none of the cases discussed infra considered La.R.S.9:5161.
This court has considered La. R.S.9:5161 in holding that the Clerk of Court is required to cancel an inscription which is not timely filed. Master Credit Plan, Inc. v. Angelo, 437 So.2d 1201 (La.App. 5th Cir.1983).
La.R.S. 9:5161 provided at the time this mortgage was executed:
On the simple written application of the property owner, creditor of the owner, or other party interested, the recorder of mortgages, or person acting as such, shall cancel in full from the records of his office all inscriptions of mortgages affecting the property which have not been reinscribed within the period of time specified by Civil Code Articles 3369. This Section shall not apply to those mortgages, the reinscription of which is dispensed with by special laws, nor to those mortgages in favor of homestead and building and loan associations [emphasis added.]
We follow our holding in Angelo but clarify that the mortgage is still effective as between the contracting parties. Schutzman, supra. Cf. Flowers, Inc. v. Rausch, 364 So.2d 928 (La.1978) (a case in which the Supreme Court affirmed the trial court’s judgment ordering the cancellation and erasure of tax assessments which had not been timely rein-scribed).[1]
*1023 | ¡^Accordingly, for the reasons stated, the judgment is affirmed at appellant’s cost.
AFFIRMED.

. That court held that an untimely reinscription ceased to have effect as to third parties. The court explained at 933-934:
In Shepherd v. Orleans Cotton Press Company, 2 La.Ann. 100 (1847) the Court alluded to the chaos which existed prior to the requirement of recordation of mortgages and noted that as early as the adoption of the Code of 1808 there was established in New Orleans a recording office where all conventional and judicial mortgages were to be inscribed before they could affect third persons. The opinion then referred to Article 3333 of the Code of 1825, which provided for registry and dictated that *1023 the effect of mortgages ceased if there was not timely reinscription. Shepherd states that "(r)egistry laws, provided they are known and certain, can work no injury." Shepherd observes that inscription is exclusively in the power of the party having an interest to make it. "If he does not reinscribe, he cannot complain of losses sustained through his own neglect.” 2 La.Ann. at 113.
Article 3333 of the Code of 1825 was the source provision of the present code article 3369, which provides for timely reinscription and decrees that the effect of registry ceases in all cases where there has been no timely renewal of inscriptions. Were it to be determined that art. 3369 is inapplicable in this case "disruption to the settled law and jurisprudence affecting title transfers in this state,” to which the Court of Appeal alluded, would surely result.
We further believe that the Court of Appeal was correct when it asserted that if art. 3369 is not applicable, a tax assessment, once recorded, would forever attach to property the tax debtor owned then or in the future, regardless of the length of years transpiring, necessitating a mortgage record search dating back to acquisition from the sovereign. In fact, this would not only be true with respect to any given present vendor, but would be equally true with respect to all prior vendors appearing in the chain of title.