| JETERS, Judge Pro Tem.
This litigation arises from an attempt by Homer Seal to require the Clerk of Court of Washington Parish, Louisiana (the Clerk), to cancel a collateral mortgage encumbering immovable property in which Seal claims an ownership interest. The holder of the collateral mortgage, Hibernia National Bank (Hibernia Bank), appeals the trial court judgment ordering the Clerk to cancel the mortgage. For the following reasons, we affirm.
DISCUSSION OF THE RECORD
None of the parties to the litigation presented any testimony at trial, and the entire evidentiary record of these proceedings is limited to four exhibits filed by Seal.[1] Those exhibits are described as follows:
(1)A certified copy of a collateral mortgage executed by James L. Ezell, Sr., and Jacqulene[2] Seal Ezell in the amount of $95,000.00 in favor of Tammy E. Thomas (designated in the instrument as a “Nominal Party”) due on demand and payable at First State Bank and Trust Company, Bogalusa, Louisiana (First State Bank). The collateral mortgage is dated January 12, 1982, and was recorded in the mortgage records of Washington Parish on January 27, 1983, in Mortgage Book 336, Page 703, as Entry Number 106978. The collateral mortgage is secured by four separate parcels of immovable property as described in the document.
(2) An incomplete document certified as a true copy of a collateral mortgage executed by James L. Ezell, Sr., and Jacquelene Seal Ezell in the amount of $37,000.00 in favor of Homer A. Seal and made payable to the order of Homer A. Seal at his address in Angie, Louisiana. The collateral mortgage is dated October 5, 1994. However, it does not contain a date on which the promissory note par-aphed for identification with it is due, nor does it contain any recording information. Additionally, it refers hto an attached “Exhibit A” for the property description of the immovable property subject to the document, but no exhibit is attached.
(3) A certified copy of a document entitled “NOTICE OF REINSCRIPTION” executed by Dana Thomas on behalf of First State Bank dated January 6, 1995, and recorded in the Washington Parish mortgage records on January 11, 1995. The doc *800 ument lists James and Jazqulene Ezell as mortgagors and refers to a document recorded in Mortgage Book 336 as Entry Number 106978. It further lists the date of the document being reinscribed as January 12, 1983, not January 12, 1982, and the notice does not state the authority by which Dana Thomas executed the document on behalf of First State Bank. Across the bottom of the notice is the notation that “THIS DOCUMENT IS HEREBY DECLARED TO BE REINSCRIBED UNDER CIVIL CODE ARTICLE 3333.”
(4) A certified copy of a cash sale deed from Jacqueline Seal Ezell Gersfeld (who is identified as being formerly married to James L. Ezell, Sr., from whom she was divorced, and currently married to Marvin Gersfeld) to Homer Andrew Seal and Lucille Hendrix Seal, husband and wife, wherein Mrs. Gersfeld transferred unto the Seals one of the parcels of immovable property described in the January 12,1982 collateral mortgage for the consideration of $13,000.00. The cash sale deed is dated August 14, 1997, and was recorded in the conveyance records of Washington Parish on August 22, 1997, in Conveyance Book 479, Page 149, as Entry Number 197535.
Seal initiated this litigation on August 20, 1998, by filing a rule against the Clerk seeking cancellation of the collateral mortgage recorded January 27, 1983. By subsequent pleadings, Seal joined Hibernia Bank as a party defendant.[3] While the trial evidence consists of only the four exhibits previously described, Hibernia' Bank, in its brief, discusses numerous other factual assertions not in evidence. Because the original action was in the nature of a rule to show cause, neither the Clerk nor Hibernia Bank filed a formal answer, and therefore, no additional undisputed facts |swere established by the pleadings. When questioned at oral argument about the factual assertions made in Hibernia Bank’s brief, the litigants could not agree to stipulate that any of those assertions could be accepted by this court as established by the record. Thus, this court is left with the same sparse record as was the trial court — four exhibits.
Trial was held on August 31, 1998. After receiving the four exhibits in evidence, the trial court took the matter under advisement and, on September 23, 1998, rendered judgment in Seal’s favor, ordering the Clerk to cancel the collateral mortgage. The trial court signed a judgment to that effect on October 1, 1998, and thereafter, Hibernia Bank perfected this appeal.
OPINION
From the record, we know only that Homer and Lucille Seal acquired a parcel of land from Jacqulene Ezell Gersfeld by cash deed recorded on August 22, 1997; that James and Jacqulene Ezell had previously mortgaged the property, as well as other property, by an act of collateral mortgage recorded January 27, 1983; and that, on January 11, 1995, First State Bank filed a document to reinscribe the January 27, 1983 collateral mortgage. It is not disputed that, absent a valid rein-scription, the original registry of the collateral mortgage preserved its ranking for only ten years from the date the obligation was created. Hibernia Bank acknowledges that the collateral mortgage was not timely reinscribed but asserts that because it was reinscribed prior to Seal’s purchase of the property at issue, the mortgage was *801 not rendered ineffective by the late rein-scription.
Acts 1992, No. 1132, effective January 1, 1993, revised the method and effect of reinscribing mortgages. In doing so, the Act also renumbered the Articles of the | ¿Louisiana Civil Code relating to the reinscription process. However, Section 7 of the Act provides:
The provisions of this Act relative to the time for reinscription of mortgages are applicable only to those mortgages created on or after January 1, 1993. Mortgages and privileges created before January 1, 1993 shall continue to be regulated by the laws in existence before January 1,1993. The procedure for reinscription of mortgages and privileges as set forth in Civil Code Articles 3328 through 3331 shall be effective as to all requests for reinscription filed on or after the effective date of this Act.
Thus, as to the matter before us, the time of reinscription of mortgages is governed by the law in effect prior to January 1, 1993, while the procedure used in rein-scribing mortgages is governed by the law in effect subsequent to January 1, 1993. In this case, it is the timeliness of the reinscription, and not the procedure, that is at issue.
Prior to January 1, 1993, La.Civ. Code art. 3369 governed reinscription of mortgages and privileges and read in pertinent part as follows:
A. (1) In all cases where mortgages and privileges, heretofore or hereafter recorded, secure the payment of an indebtedness, the whole of which matures less than nine years from the date of the obligation, the registry preserves the evidence of such mortgages and privileges during ten years, reckoning from the date of the obligation.
(2) The recordation in the mortgage records in which such an original instrument has been recorded of a written agreement, by authentic act or by private act duly acknowledged, entered into between the owner of the indebtedness and the owner of the property, extending the maturity of the secured indebtedness, or any part thereof, to a date more than nine years from the date of the original obligation, shall have the effect of preserving the evidence of the original mortgage or privilege until six years after the latest date to which the maturity has been so extended.
[[Image here]]
C. On the recordation of any written •agreement of extension of maturity, as provided for in this Article, the recorder of mortgages shall make marginal note on the inscription of the original instrument stating that the maturity has been extended and giving reference to the Book and Folio in which the agreement extending the said maturity has been recorded.
[[Image here]]
E. The effect of the registry ceases in all cases, even against the | ¿contracting parties, unless the inscriptions have been renewed within the periods of time above provided in the manner in which they were first made, or by filing a notice of reinscription of mortgage or a written request for reinscription by the mortgagee or any interested person, together with a copy of the original act of mortgage. In all cases the reinscription of the mortgages and privileges shall preserve their effect for ten years from the date of the timely renewal, as above provided.
(Emphasis added.)
Additionally, La.R.S. 9:5161 provided a procedure by which the appropriate party could have the mortgage canceled from the public records for the holder’s failure to have it reinscribed. Prior to January 1, 1993, that statute read as follows:[4]
*802 On the simple written application of the property owner, creditor of the owner, or other party interested, the recorder of mortgages, or person acting as such, shall cancel in full from the records of his office all inscriptions of mortgages affecting the property which have not been reinscribed within the period of time specified by Civil Code Article 3S69. This Section shall not apply to those mortgages, the reinscription of which is dispensed with by special laws, nor to those mortgages in favor of homestead and building and loan associations.
(Emphasis added.)
Thus, former La.Civ.Code art. 3369 envisioned two situations wherein a mortgage’s term could be extended. The first involved an agreement between the owner of the indebtedness and the owner of the property. See former La.Civ.Code art. 3369(A) and (C). The second involved the unilateral action of “the mortgagee or any interested person.” See former La.Civ. Code art. 3369(E). Additionally, La.R.S. 9:5161, as it read prior to January 1, 1993, provided a simple method for cancellation |fiof a mortgage not timely reinscribed.[5] However, the early jurisprudence interpreting former La.Civ.Code art. 3369 basically ignored the existence of La.R.S. 9:5161.
In a very early case, Commercial Nat. Bank of Shreveport v. McDaniel, 156 So. 43 (La.App. 2 Cir.1934), the second circuit addressed the application of former La. Civ.Code art. 3369 to a situation wherein a mortgage was reinscribed more than ten years and four months after the date the obligation arose. In fact, the holder of the mortgage did not reinscribe the mortgage until after suit had been filed to enforce it. The second circuit rejected the mortgagor’s argument that former La.Civ.Code art. 3369(E) should be interpreted to mean that failure to reinscribe the mortgage within ten years from the date of the obligation rendered the mortgage ineffective as between the parties. In doing so, the court noted: “It has been held many times that if one suffers ten years to elapse without reinscribing his mortgage or lien, the rank of such is lost and a subsequent reinscription mil give it effect only from such reinscription. ” Id. at 47 (emphasis added). Thus, the second circuit concluded that the failure to timely reinscribe the mortgage did not affect the enforcement rights of the mortgagee against the mortgagor because “registry of acts of mortgage and other instruments affecting real estate is primarily done for the purpose of affording notice to third persons of the existence of such incum-brances.” Id.
|7In Schutzman v. Dobrowolski, 191 La. 791, 186 So. 338 (La.1939), the Louisiana *803 Supreme Court reached a similar conclusion concerning the rights of the mortgagee where the mortgage was not timely reinscribed. In Schutzman, the plaintiff brought suit in January of 1933 on three vendor’s lien mortgage notes dated March 12, 1920. There was no evidence that the notes had been reinscribed, and the defendants argued, based on former La.Civ. Code art. 3369, that they were unenforceable. The supreme court cited Commercial Nat. Bank of Shreveport with favor and specifically overruled prior jurisprudence which had held that a mortgage not timely reinscribed has no effect after ten years, even as between the mortgagee and mortgagor. Instead, the supreme court concluded that the failure to timely reinscribe a mortgage merely affects the registry of the mortgage, and not its validity as between the parties to the instrument. However, the supreme court made no comment concerning the effect a late reinscription might have on the mortgage’s ranking.
In Security National Trust v. Alexander, 621 So.2d 30, 31 (La.App. 2 Cir.), writ denied, 629 So.2d 1140 (La.1993), the second circuit followed the holdings in Schutz-man and Commercial Nat. Bank of Shreveport, concluding that the failure to timely reinscribe a collateral mortgage does not “render the mortgage unenforceable as against the mortgagor, but renders the initial inscription of the mortgage in the public records ineffective, primarily as to third persons, such as purchasers of the property or other creditors of the mortgagor.” In that case, the mortgage at issue had been executed and recorded on June 13, 1973, and was not reinscribed until August 8, 1983. When the assignee of the mortgage instituted a suit to enforce the mortgage in June of 1991, the original mortgagor brought a separate action to have the | Rmortgage canceled. The second circuit held the mortgage enforceable against the mortgagor and further concluded that it then “rank[ed] from the date of reinscription rather than from the original recordation date .” Id.
In Commercial Nat. Bank of Shreveport, Schutzman, and Security National Trust, the property at issue was still owned by the original mortgagor when the litigation was instituted. Before the second circuit rendered its decision in Security National Trust, the third circuit had addressed issues involving the interpretation of former La.Civ.Code art. 3369 in two cases where the property had been transferred prior to the mortgagee’s efforts to enforce the untimely reinscribed mortgage. In doing so, the third circuit did not mention Commercial Nat. Bank of Shreveport or Schutzman.
In Brookshire v. Broussard, 326 So.2d 893 (La.App. 3 Cir.1976), the mortgage at issue was executed on October 16, 1961, and reinscribed on September 4, 1974. When the action on the mortgage was filed, the original mortgagor had died and his heirs were named as defendants. Additionally, the property had been sold to a third party more than ten years from October 1, 1961, but before reinscription. In upholding the trial court’s judgment canceling the mortgage, the third circuit stated: “We agree with the trial court that the effect of the registry of this mortgage ceased, even against the contracting parties, on October 16, 1971, because of the failure of plaintiff to renew the inscription of that mortgage within ten years, as provided by LSA-C.C. art. 3369.” Id. at 897. However, the third circuit also concluded that the underlying obligation secured by the mortgage had prescribed.
In Delta Security Bank & Trust Co. v. Byrnes, 415 So.2d 605 (La.App. 3 Cir.1982), the mortgage at issue was executed on November 5, 1964, recorded on | (November 9, 1964, and reinscribed on September 1, 1976. As in Brookshire, the mortgagor had sold the property subject to the mortgage prior to the collection action. However, unlike in Brookshire, the mortgagor sold the property on February 26, 1965, or before the ten years had run. The third circuit awarded judgment to the mortgagee for the balance due on *804 the underlying obligation but sustained the mortgagor’s exception of prescription as to the mortgage itself and ordered it can-celled. In doing so, the third circuit made the following observation:
In discussing the failure to reinscribe a mortgage in accordance with article 3369, Professor Ralph Slovenko says at page 881 in his Treatise on Creditor’s Rights under Louisiana Civil Law:
“The article provides that the effect of the registry ceases, even against the contracting parties, if the inscriptions have not been renewed within the prescribed time periods. Since the effect of registry is notice to third parties, it would follow that the right of the mortgagee to follow the property into the hands of a third person would thus cease. This right of pursuit is one of the major characteristics of the mortgage as a security device; thus, failure to reinscribe might be considered a practical, if not legal extinction of the mortgage. However, the mortgagee, in the absence of the competing third party, would still have the right of the relatively convenient method of execution provided by the device of mortgage.”
Id. at 606.
The second circuit, in Security National Trust, noted the Brookshire and Delta Security Bank & Trust Co. decisions, but found them to be distinguishable from the decisions in Commercial Nat. Bank of Shreveport and Schutzman because, in Brookshire and Delta Security Bank & Trust Co., the property subject to the mortgages had been transferred to third parties before the creditors attempted to enforce the mortgages.
The fifth circuit also had the opportunity to consider the reinscription issue in St. Charles Mortgage & Loan, Inc. v. Oubre, 97-371 (La.App. 5 Cir. 10/15/97); 701 So.2d 1020. In that case, the court considered the decisions in Commercial Nat. Bank of Shreveport, Schutzman, Security National Trust, Brookshire, and Delta Security Bank & Trust Co., but based its decision to order the mortgage canceled, not on former La.Civ.Code art. 3369, but on La.R.S. 9:5161. The mortgage at issue in St. Charles Mortgage & Loan, Inc. was executed on April 23, 1985, and reinscribed on October 30, 1995. On December 12, 1996, the Clerk of Court of St. Charles Parish canceled the reinscription as untimely, and the mortgagee filed a petition for writ of mandamus seeking to have the reinscription reinstated. The mortgagors intervened asserting that the mortgage had prescribed prior to its October 30 reinscription. In rejecting the mortgagee’s writ of mandamus, the fifth circuit first discussed the rulings in Schutzman and Commercial Nat. Bank of Shreveport and then attempted to explain the rulings in Brookshire, Delta Security Bank & Trust Co., and Security National Trust as follows:
In Brookshire v. Broussard, 326 So.2d 893 (La.App. 3rd Cir.1976), and Delta Sec. Bank & Trust Co. v. Byrnes, 415 So.2d 605 (La.App. 3rd Cir.1982) the third circuit held that a mortgage which is not timely reinscribed can be canceled from the public records. However both of these cases also held that the mortgage was unenforceable as well as subject to cancellation. In contrast, the second circuit held that an enforceable mortgage could not be canceled because of the untimely reinscription. Security Nat. Trust v. Alexander, 621 So.2d 30 (La.App. 2nd Cir.1993), writ denied, 629 So.2d 1140 (La.1993).
The above-cited eases from the second and third circuits consider recordation and enforceability of a mortgage, between the contracting parties, to be equivalent. The Schutzman court, however, made a distinction between enforceability between the contracting parties and recordation. Additionally, none of the cases discussed infra considered La.R.S. 9:5161.
Id. at 1022.
We do not agree with the fifth circuit that the second and third circuits consid *805 ered recordation and enforceability to be equivalent. In fact, we find no Inconflict in the decisions of the second and third circuits insofar as they discuss the rights retained by the mortgagee against the mortgagor where a mortgage is not timely reinscribed. In Security National Trust, the second circuit recognized that the untimely reinscribed mortgage was enforceable against the mortgagor. In both third circuit cases, unlike the second circuit, the court was faced with situations in which the mortgagor had divested himself of the property prior to reinseription. Rather than conflicting with the holdings in the prior cases, including the supreme court’s holding in Schutzman, the third circuit simply recognized that the transfer of ownership to third parties prior to rein-scription removed the property from the reach of the mortgagee because of the protection given to those third parties when the effect of the registry had ceased ten years from the obligation’s creation. We note that neither the second circuit nor third circuit had to consider the effect of the untimely reinscription. In both Commercial Nat. Bank of Shreveport and Security National Trust, the original mortgagor still owned the property at issue when the collection efforts began, and, in Brookshire and Delta Security Bank & Trust Co., the original mortgagor no longer owned the property at the time of rein-scription. Additionally, in Brookshire, the underlying obligation had prescribed. In neither of the third circuit decisions did the court suggest that the mortgagee would not have a personal action against the mortgagor.
We do agree with the fifth circuit, however, that none of the prior decisions considered the effect of La.R.S. 9:5161. Citing its decision in Master Credit Plan, Inc. v. Angelo, 437 So.2d 1201 (La.App. 5 Cir. 1983), the fifth circuit, in St. Charles Mortgage & Loan, Inc., determined that La. R.S. 9:5161 required the Clerk of Court “to cancel an inscription which is not timely filed” although “the mortgage is still 1 ^effective as between the contracting parties.” St. Charles Mortgage & Loan, Inc., 701 So.2d at 1022.
The case cited by the fifth circuit, Master Credit Plan, Inc., did not involve a mortgage, but rather a civil judgment. In that case, Master Credit Plan, Inc. had obtained a money judgment against Louis E. Angelo on December 17, 1970, and recorded the judgment on January 20, 1971. The judgment creditor filed a petition to revive the judgment on November 14, 1980, and, before a judgment of revival was rendered, on December 18, 1980, Angelo’s succession representative filed an affidavit with the Clerk of Court requesting cancellation of the judgment. The Clerk of Court canceled the inscription of the judgment'the same day, and, on the next day, the succession representative sold part of the succession property to third parties. The judgment creditor then filed a mandamus suit seeking to have the canceled inscription reinscribed effective December 18,1980. The fifth circuit made the following comments in affirming the cancellation of the inscription:
The facts are clear that the judgment creditor did not attempt reinscription within ten (10) years of the date of the obligation. According to L.R.S. 9:5161 the Clerk was thus required to cancel the inscription not timely rein-scribed. ...
The judgment creditor nevertheless argues to us that the cancellation should be governed by the provisions of L.R.S. 9:5162 and points out that under that article cancellation may be had only when the encumbrance affecting the property shall have become unenforceable or shall have been prescribed or preempted or the effect of which shall have ceased because of lapse of time. They reason thus that the judgment was in the course of being revived and that it still had an enforceable effect and had not prescribed or been preempted. However, we point out again that there is a difference between the effect of a *806 judgment and the effect of an inscription of a judgment as discussed above. And it is immaterial to the inscription that the original judgment may still have force and effect. The inscription must still be reinscribed in ten (10) years from the date of the obligation. Cancellation by the Clerk of Court was proper under the provisions of L.R.S. 9:5161 requiring cancellation of all inscriptions of mortgage which have not been reinscribed within the period of time specified by C.C. Article 1133369. That section is operable simply by virtue of the failure to reinscribe timely, no matter that the original encumbrance may still be viable for its enforcement in other ways. We must follow the plain words of the language in these statutory requirements, especially in view of the fact that it is only by following the provisions for inscriptions that one obtains a judicial mortgage in the first place.
Master Credit Plan, Inc., 437 So.2d at 1204 (emphasis added).
In the case before us, Hibernia Bank’s mortgage was not timely reinscribed, but Seal did not acquire ownership of the mortgaged property until after it had been reinseribed. If we were to apply the language in Commercial Nat. Bank of Shreveport and Security National Trust which suggests that Hibernia Bank’s mortgage now ranks from the date of reinscription and ignore La.R.S. 9:5161, we could easily conclude that the trial court erred in ordering the Clerk to cancel the mortgage. However, we find that the language concerning the mortgage ranking of an untimely reinscribed mortgage is simply dicta. Considering the clear and unambiguous language of La.R.S. 9:5161, we must conclude that the trial court did not err in ordering the Clerk to cancel the mortgage.
Simply stated, we cannot ignore La.R.S. 9:5161. It existed prior to the changes effected by Acts 1992, No. 1132, and still exists in an amended form today. We recognize that the changes effected by Acts 1992, No. 1132, specifically incorporate the dicta found in Commercial Nat. Bank of Shreveport and Security National Trust, as La.Civ.Code art. 3335 provides that “[a] notice of reinscription that is filed after the effect of recordation ceases produces the effects of recordation, but only from the day the notice if filed.” However, we are to decide this matter based on the law in effect prior to January 1, 1993, and we are not called upon to consider the apparent conflict between La.Civ.Code art. 3335 and La.R.S. 9:5161.
DISPOSITION
| MFor the foregoing reasons, we affirm the trial court’s judgment ordering the Clerk of Court of Washington Parish to cancel the collateral mortgage recorded on January 27, 1983. All costs of this appeal are taxed against Hibernia National Bank.
AFFIRMED.

. The appellate record contains three exhibits purportedly offered by the Clerk. However, the trial transcript does not indicate that these exhibits were offered into evidence. At oral argument, the litigants acknowledged that the listing of these exhibits as evidentiary offerings was a mistake and that they were not offered at trial.

. Mrs. Ezell's first name is spelled three different ways in the documents which were admitted into evidence. However, her signature appears as "Jacqulene” on the documents. In this opinion, we have described the documents in the manner in which her name is presented, but in all other cases, we have referred to her, when appropriate, as "Jacqulene.”

. While the record contains no evidence of Hibernia Bank being the successor of First State Bank, Hibernia Bank's brief asserts that the acquisition occurred on or about December 31, 1994. It is not disputed, however, that Hibernia Bank is currently the holder of the original collateral mortgage note par-aphed for identification with the collateral mortgage at issue.

. La.R.S. 9:5161 still provides an ex parte procedure for cancellation of an untimely reinscribed mortgage by the appropriate party. Acts 1992, No. 1132, § 6, effective Janu *802 ary 1, 1993, amended La.R.S. 9:5161, but only to the extent that the references contained therein were consistent with the other statutory changes of the act. It now reads as follows:
On the simple written application of the property owner, creditor of the owner, or other party interested, the recorder of mortgages, or person acting as such, shall cancel in full from the records of his office all inscriptions of mortgages affecting the property which have not been reinscribed within the period of time specified by Civil Code Articles 3328 through 3331, R.S. 6:830, or other special legislation.

. The issue of cancellation was also addressed in La.R.S. 9:5162, which was not amended and reads today as it did prior to January 1, 1993:
Upon the filing in his office of a sworn written request by the owner of any real or personal property or by any other party in interest, the recorder of mortgages of each parish, except the Parish of Orleans, shall cancel in full from the records of his office the inscriptions of all encumbrances affecting the property which shall have become unenforceable or shall have prescribed or perempted or the effect of which shall have ceased, because of lapse of time.
This Section applies to encumbrances in favor of the State of Louisiana and all its political subdivisions, as well as to those in favor of married women, minors, and interdicts.
(Emphasis added.)